STATE OF NORTH CAROLINA v. ANTONIO WILLIAMS

No. COA09-388

(Filed 22 December 2009)

**1. Appeal and Error— notice—sufficient**

The State's oral notice of appeal of the trial court's decision to grant defendant's motion to suppress complied with N.C. R. App. P. 4(a)(1). The notice was given in open court when the court reconvened five days after the conclusion of the pretrial suppression hearing.

**2. Constitutional Law— encounter not a seizure—erroneous suppression of evidence**

The trial court committed reversible error in granting defendant's motion to suppress cocaine found on his person. Because the encounter between the police officer and defendant did not constitute a "seizure," the encounter did not implicate the Fourth Amendment prohibition against unreasonable searches and seizures. The order of the trial court was reversed.

Appeal by the State from order dated 13 November 2008, *nunc pro tunc* 13 August 2008, by Judge John O. Craig in Superior Court, Forsyth County. Heard in the Court of Appeals 17 September 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Derrick C. Mertz, for the State.*

*Glover & Petersen, P.A., by Ann B. Petersen, for Defendant-Appellee.*

STEPHENS, Judge.

*I. Procedural History and Factual Background*

On 13 November 2007, Defendant was indicted on a charge of felony possession of cocaine. On 30 July 2008, Defendant filed a pretrial motion to suppress the cocaine seized as a result of a search of his person. Defendant's motion was heard on 13 August 2008 in Forsyth County Superior Court.

The State's evidence presented at the hearing tended to show the following: On 28 July 2007, Officer K.K. Wade ("Officer Wade") of the Winston-Salem Police Department was patrolling an area around West Academy Street. Officer Wade testified that around that time,

officers had been advised to look for 30-day vehicle tags, as many had been stolen around the city.

At approximately 1:30 a.m., Officer Wade observed Defendant driving a vehicle displaying a 30-day tag he suspected was expired because it was dirty and worn. While Officer Wade ran the tag in his computer, he followed Defendant's vehicle. Before the response came back, Defendant pulled into a driveway in the 1100 block of West Academy Street. Officer Wade did not activate his blue lights or siren, nor did he give any other indication for Defendant to stop.

Once Defendant pulled into the driveway, Officer Wade pulled over to the curb on the other side of the street. When Officer Wade approached Defendant's vehicle, he recognized Defendant's passenger, as he had previously arrested her for narcotics possession and prostitution.

Officer Wade asked Defendant about the status of the 30-day tag, and Defendant told him it was expired. Officer Wade then asked Defendant for his license, and Defendant handed him an expired registration and admitted that he did not have a driver's license. Officer Wade asked Defendant to step out of the vehicle to speak with him. Officer Wade and Defendant walked to the sidewalk area behind the vehicle, at which point Officer Wade told Defendant that he recognized Defendant's passenger and "knew what kind of activity she was involved in." Officer Wade asked if Defendant had any outstanding warrants and if Defendant had any drugs on him, to which Defendant responded, "no." Defendant then consented to a search of his person, which revealed what appeared to be cocaine.

Based on the foregoing evidence, Judge Craig granted Defendant's motion to suppress the cocaine seized by Officer Wade, concluding that because "no additional reasonable suspicion of additional criminal activity existed, the officer's request for consent to search the defendant's person exceeded the scope of the stop, and the prolonged detention of [D]efendant violated the 4th Amendment." The State gave oral notice of appeal in open court on 18 August 2008, when the court reconvened. On 11 February 2009, the State filed a certification of its appeal with the trial court pursuant to N.C. Gen. Stat. § 15A-979(c) (2007) ("An order by the superior court granting a motion to suppress prior to trial is appealable to the appellate division of the General Court of Justice prior to trial upon certificate by the prosecutor to the judge who granted the motion that the appeal is not taken for the purpose of delay and that the evidence is essential to the case.").

## II. Discussion

### A. Notice of Appeal

[1] Defendant argues that the State's alleged failure to comply with N.C. R. App. P. 4(a) precludes the State's appeal in this instance. Rule 4(a) provides that notice of appeal in criminal cases may be given by "giving oral notice of appeal at trial" or by filing a written notice of appeal. N.C. R. App. P. 4(a). Defendant argues that because there was no trial at which the State could have given oral notice and the State failed to file written notice of appeal, the State has failed to preserve its right to appeal.

Defendant's interpretation of the phrase "at trial" in Rule 4(a)(1) is misguided. Defendant would have this Court hold that oral notice of appeal given in open court is insufficient in the absence of a full trial. Defendant's interpretation is unreasonably narrow and is contrary to the law of this State. *See State v. Turner*, 305 N.C. 356, 359, 289 S.E.2d 368, 370 (1982) (allowing an appeal of a trial court's grant of a motion to suppress evidence where the State "gave oral notice of appeal in open court"); *State v. Lay*, 56 N.C. App. 796, 798, 290 S.E.2d 405, 406, *disc. review denied*, 306 N.C. 390, 294 S.E.2d 216 (1982) (finding that the State gave proper notice of appeal of a grant of a motion to suppress by "giving oral notice of appeal on . . . the day judgment was entered"). The State's oral notice of appeal given in open court when the court reconvened five days after the conclusion of the pretrial hearing is sufficient to comply with N.C. R. App. P. 4(a)(1). Defendant's argument is overruled.

### B. Motion to Suppress

[2] We turn now to the State's contention that the trial court erred in granting Defendant's motion to suppress because the encounter between Officer Wade and Defendant does not constitute a "seizure," and thus falls outside the ambit of the Fourth Amendment. The scope of appellate review of a ruling upon a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). For the reasons which follow, we conclude that the trial court erred in granting the motion to suppress.

An encounter between a law enforcement officer and a citizen does not implicate the Fourth Amendment's prohibition against un-

reasonable searches and seizures in the absence of a "seizure" of the person. *Florida v. Royer*, 460 U.S. 491, 498, 75 L. Ed. 2d 229, 236 (1983) ("If there is no detention—no seizure within the meaning of the Fourth Amendment—then no constitutional rights have been infringed."). In *Florida v. Bostick*, 501 U.S. 429, 115 L. Ed. 2d 389 (1991), the Supreme Court of the United States held that

> a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free "to disregard the police and go about his business," [*California v. Hodari D.*, 499 U.S. 621, 628, 113 L. Ed. 2d 690 (1991)], the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature. The Court made precisely this point in [*Terry v. Ohio*, 392 U.S. 1, 19, n. 16, 20 L. Ed. 2d 889, 905, n. 16 (1968)]: "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."

*Id.* at 434, 115 L. Ed. 2d at 398. Even in the absence of any suspicion that an individual is engaged in criminal activity, law enforcement officers may "pose questions, ask for identification, and request consent to search . . . provided they do not induce cooperation by coercive means." *United States v. Drayton*, 536 U.S. 194, 201, 153 L. Ed. 2d 242, 251 (2002).

Absent physical force, a seizure occurs only if, "taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.' " *Bostick*, 501 U.S. at 437, 115 L. Ed. 2d at 400 (quoting *Michigan v. Chesternut*, 486 U.S. 567, 569, 100 L. Ed. 2d 565, 569 (1988)).

> Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

*United States v. Mendenhall*, 446 U.S. 544, 554-55, 64 L. Ed. 2d 497, 509-10 (internal citations omitted), *reh'g denied*, 448 U.S. 908, 65 L. Ed. 2d 1138 (1980).

Here, the trial court found that Defendant was seized within the meaning of the Fourth Amendment and that Officer Wade's subsequent search of Defendant was illegal based on this Court's holdings in *State v. Myles*, 188 N.C. App. 42, 654 S.E.2d 752 (2008) and *State v. Parker*, 183 N.C. App. 1, 644 S.E.2d 235 (2007). These cases are inapposite to the present case, however. In both *Myles* and *Parker*, a law enforcement officer initiated a stop of Myles' and Parker's vehicles after observing the commission of traffic infractions, and then detained the defendants for questioning about matters both related and unrelated to the traffic stop. *Myles*, 188 N.C. App. at 43-44, 654 S.E.2d at 753-54; *Parker*, 183 N.C. App. at 3-4, 644 S.E.2d at 238-39. Thus, the defendants in *Myles* and *Parker* were clearly seized within the meaning of the Fourth Amendment, and the validity of their detention was thereby squarely raised as an issue of constitutional proportion.

In the present case, however, Officer Wade did not initiate a traffic stop. Defendant did not pull into the driveway as a result of any show of authority from Officer Wade. Although Officer Wade suspected that Defendant's 30-day tag was expired, he did not receive confirmation of this until he was speaking with Defendant. There is no evidence that Officer Wade exerted any physical force or engaged in any show of authority during his brief[1] encounter with Defendant. Accordingly, the holdings of *Myles* and *Parker* under the Fourth Amendment are not relevant to the facts of this case.

Our analysis instead is informed by this Court's recent decision in *State v. Isenhour*, —— N.C. App. ——, 670 S.E.2d 264 (2008).[2] In *Isenhour*, two law enforcement officers were patrolling the area near a fast food restaurant parking lot, which was known for drug and prostitution activity. *Id.* at ——, 670 S.E.2d at 266. The officers observed defendant and a passenger sitting in a car in the back corner of the parking lot, and noticed that neither the defendant nor his passenger had exited from the car during a ten-minute period. *Id.* The

---

1. Officer Wade testified that approximately one to two minutes passed from the time he began the conversation with Defendant until he found the crack cocaine in Defendant's pocket.

2. We note that because our opinion in *Isenhour* was entered on 16 December 2008, the trial court did not have the benefit of this opinion when its order was entered on 13 November 2008, *nunc pro tunc* 13 August 2008.

officers pulled up in a marked patrol car and parked approximately eight feet away from the defendant's car. *Id.* The officers approached the defendant's car and asked to speak with the defendant. *Id.* After becoming suspicious of the defendant's explanation for his presence in the parking lot, one officer asked the defendant to exit the vehicle, patted down the defendant, and received consent to conduct a search of the defendant's vehicle, which revealed illegal narcotics. *Id.*

Our Court held that the encounter between the officers and the defendant did not constitute a seizure for Fourth Amendment purposes. In concluding that the defendant was free to leave the scene at any time during the encounter, our Court noted: (1) that the defendant was free to drive away from the officers, as the patrol car did not physically block the defendant's car; (2) that "nothing else in [the officer's] behavior or demeanor amounted to the 'show of force' necessary for a seizure to occur[;]" (3) that the officers did not create "any real 'psychological barriers' to [the] defendant's leaving" such as activating their siren or blue lights, removing guns from their holsters, or using threatening language; and (4) "that the encounter proceeded in a non-threatening manner and that [the] defendant was cooperative at all times." *Id.* at ——, 670 S.E.2d at 268; *see also State v. Christie*, 96 N.C. App. 178, 184, 385 S.E.2d 181, 184 (1989) (finding there was no seizure because police officers "did not display any weapons; they did not use threatening language or a compelling tone of voice; and they did not block or inhibit [the] defendant in any way from refusing to answer their questions or leav[ing] the [scene]").

Likewise in the present case, the encounter between Defendant and Officer Wade did not constitute a seizure under the Fourth Amendment. Officer Wade parked his patrol car on the opposite side of the street from the driveway in which Defendant was parked, and thus did not physically block Defendant's vehicle from leaving the scene. Further, Officer Wade did not activate the siren or blue lights on his patrol car. There is no evidence that he removed his gun from its holster, or used any language or displayed a demeanor suggesting that Defendant was not free to leave. As was the case in *Isenhour*, it appears that the encounter between Officer Wade and Defendant "proceeded in a non-threatening manner and that [D]efendant was cooperative at all times." *Id.* at ——, 670 S.E.2d at 268. A reasonable person in these circumstances "would feel free 'to disregard the police and go about his business[.]' " *Bostick*, 501 U.S. at 434, 115 L. Ed. 2d at 398. We thus conclude that the encounter between Officer

Wade and Defendant was entirely consensual, and Fourth Amendment scrutiny is not triggered.

Based on the foregoing, we hold that Defendant was not "seized" within the meaning of the Fourth Amendment. Accordingly, the trial court committed reversible error in granting Defendant's motion to suppress. In light of this holding, we need not address the State's remaining arguments. The order of the trial court is

REVERSED.

Judge BEASLEY concurs.

Judge HUNTER, JR. concurs in the result.