STATE OF NORTH CAROLINA
v.
ERIC LARS KNUDSEN

No. COA12-1475

Filed 20 August 2013

1. **Motor Vehicles—driving while impaired—findings of fact—sufficiency of evidence**

    The trial court did not err in a driving while impaired case by making its findings of fact numbers eight, nine, and twelve. There was sufficient evidence to support these findings.

2. **Search and Seizure—Fourth Amendment—totality of circumstances**

    The trial court did not err by concluding that defendant was seized within the meaning of the Fourth Amendment. The totality of the circumstances discernible from the record on appeal showed no error.

3. **Search and Seizure—motion to suppress evidence—totality of circumstances—minimal level of objective justification—reasonable articulable suspicion**

    The trial court did not err in a driving while impaired case by granting defendant's motion to suppress the evidence. The totality of the circumstances did not rise to the minimal level of objective justification required for a reasonable articulable suspicion under the Fourth Amendment.

Appeal by the State from order entered 11 January 2013 by Judge Patrice A. Hinnant in Superior Court, Forsyth County. Heard in the Court of Appeals 4 June 2013.

*Attorney General Roy Cooper, by Special Deputy Attorney General Robert C. Montgomery and Assistant Attorney General Joseph L. Hyde, for the State.*

*Rudolf Widenhouse & Fialko, by M. Gordon Widenhouse, Jr.; and Ashley Canon, for Defendant-Appellee.*

McGEE, Judge.

Eric Lars Knudsen (Defendant) was charged with driving while impaired on 20 July 2011 in violation of N.C. Gen. Stat. § 20-138.1. Defendant pleaded guilty to the charge in Forsyth County District Court on 27 March 2012, and received a sixty-day suspended sentence and twelve months' unsupervised probation.

On that same day, Defendant filed notice of appeal to superior court. Defendant filed a "Motion to Dismiss for Lack of Reasonable Suspicion" on 27 April 2012, and a hearing was held in superior court on 14 June 2012. A written order was filed on 11 January 2013, in which the trial court held that Defendant was illegally stopped and seized in violation of the Fourth Amendment to the United States Constitution. All evidence resulting from that seizure was suppressed as "fruit of the poisonous tree."

At the hearing, Officer B.L. Williams (Officer Williams) and Corporal R.A. Necessary (Corporal Necessary), with the Winston-Salem Police Department, testified for the State. The officers' testimony tended to show the following:

Officer Williams, a bicycle officer with the police department, was on routine patrol in the 500-600 block of North Trade Street in downtown Winston-Salem, on the evening of 28 July 2011. Corporal Necessary was also on patrol in that same area in a marked police department vehicle. At approximately 11:10 p.m., Corporal Necessary observed Defendant get into a 2007 blue Volkswagen Rabbit (the vehicle) while holding a cup that looked similar to cups that were commonly used at downtown bars to serve mixed drinks. The vehicle was parked near Finnegan's, a local restaurant and pub.

Corporal Necessary testified that, as he was driving south on Trade Street, he saw Defendant open the driver's side door and get into the vehicle, which was parked on the west side of Trade Street, facing south. At this point, Corporal Necessary slowed down drastically, and noticed that the headlights of the vehicle had come on. After passing by the

**STATE v. KNUDSEN**

[229 N.C. App. 271 (2013)]

vehicle, Corporal Necessary spotted Officer Williams in the street on his bicycle, facing north. Corporal Necessary stopped, relayed to Officer Williams what he had seen, and asked Officer Williams if he would ride by the vehicle and determine if the cup Corporal Necessary had seen Defendant holding contained alcohol. When Corporal Necessary stopped to talk to Officer Williams, he was very close to the vehicle, roughly a car length and a half away. After speaking with Officer Williams, Corporal Necessary then turned his police cruiser around, passed by the vehicle again, and turned right on Sixth Street.

Officer Williams, riding north on his bicycle in the southbound lane, approached the vehicle and noticed that its lights were on and that the engine was running. Officer Williams was in his police uniform, which included a weapon. According to Officer Williams' testimony, he rode past the vehicle at an arm's length distance, and made it obvious that he was looking inside the vehicle. Officer Williams observed two men sitting in the front seat. Defendant, who was sitting in the driver's seat, was holding a clear, light-colored, Solo-type cup, similar to ones used in downtown bars.

After passing by the vehicle, Officer Williams rode a short distance away and stopped on the sidewalk at an entrance to a parking lot so that he could contact Corporal Necessary and relay what he had just seen. As he was doing so, the two males exited the vehicle, and began walking the short distance down the sidewalk towards Officer Williams. Corporal Necessary, who had been planning on leaving the area, saw Defendant and the other male get out of the vehicle and walk toward Officer Williams. Instead of leaving the area, Corporal Necessary decided to park his police cruiser behind Officer Williams, blocking the entrance of the parking lot in the process. Corporal Necessary testified as follows:

> I was actually going to leave the area at that point. And I was traveling extremely slow. [Defendant] and the other white male get out and start walking down the sidewalk towards Officer Williams. When I seen this, I pulled in.
>
> Q. And how close were you when you saw the defendant walking with the passenger on the sidewalk?
>
> A. I'm still in the car on the road, and I turned. It's kind of hard to explain. I'll show you. This is the entrance to the parking lot. I'm in this lane. I drove down, faced towards the entrance to the parking lot, at an angle, and stopped and got out.

Corporal Necessary further testified that, when he got out of his cruiser, Officer Williams and Defendant were already talking. Corporal Necessary stayed roughly three to four feet behind Officer Williams and Defendant as they spoke. As Defendant walked towards Officer Williams and was approximately an arm's length away, Officer Williams asked Defendant, "what do you have in the cup?"

There is conflicting testimony about whether Defendant had the cup in his hands while on the sidewalk. Officer Williams testified that, although he saw the cup in Defendant's hand while Defendant was in the vehicle, he believed that Defendant did not have the cup with him on the sidewalk. However, Corporal Necessary testified that Defendant did, in fact, have the cup in his hand while he was on the sidewalk. Corporal Necessary further testified that, when Officer Williams asked Defendant what was in the cup, Defendant replied, "water" and handed the cup to Officer Williams, who determined that the cup contained water. Officer Williams stated that Defendant's clothes were not messy, but that his eyes appeared "a little glazy and his face was kind of flush."

Both Officer Williams and Corporal Necessary admitted that, prior to speaking with Defendant, they did not know where Defendant had been, where he was going, or what was in the cup that had first drawn their attention. Defendant never moved the vehicle and Officer Williams, who testified that he was roughly three feet from Defendant, did not notice any odor of alcohol on Defendant.

Following this testimony, the trial court granted Defendant's motion. The State appeals.

## I.

The issues presented on appeal by the State are (1) whether the trial court erred in its written findings of fact, (2) whether the trial court erred in concluding as a matter of law that Defendant was seized within the meaning of the Fourth Amendment to the United States Constitution, and (3) even if Defendant was seized, whether the trial court erred in concluding that the seizure was unsupported by a reasonable suspicion.

## II.

[1] The State first argues that portions of findings of fact numbers eight, nine, and twelve in the trial court's 14 June 2012 order are erroneous. The scope of review of a suppression order is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support

the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982) (citations omitted).

We accord great deference to a trial court's findings of fact, as it is entrusted with the duty to "hear testimony, weigh and resolve any conflicts in the evidence, find the facts, and, then based upon those findings, render a legal decision, in the first instance, as to whether or not a constitutional violation of some kind has occurred." *Id.* at 134, 291 S.E.2d at 619-20. The findings of fact that are not challenged by the State on appeal are binding and deemed to be supported by competent evidence. *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011). For the portions that are challenged, this Court looks to discern whether competent evidence exists to support the finding made by the trial court. If there is competent evidence to support the trial court's finding, then it is similarly binding on appeal, "even if the evidence is conflicting." *State v. Blackstock*, 165 N.C. App. 50, 55, 598 S.E.2d 412, 416 (2004) (citing *State v. Braxton*, 344 N.C. 702, 709, 477 S.E.2d 172, 176 (1996)). It is with this deference in mind that we analyze the State's contentions.

The trial court made the following findings of fact relevant to this appeal:

1. On July 28, 2011, at approximately 10:00 p.m. to 10:30 p.m.[,] Officer B.L. Williams was on routine patrol within the city limits of Winston-Salem, N.C. He was working the evening shift in the downtown district of Winston-Salem between the 500 and 600 blocks of North Trade Street. On the date and time in question, Officer Williams was operating a police issued bicycle.

2. While on patrol, Officer Williams met Corporal Necessary who was also on routine patrol. Corporal Necessary was operating a marked patrol vehicle and was working as a member of the Forsyth County Driving While Impaired Task Force.

3. Corporal Necessary told Officer Williams that he thought he had seen an individual walking downtown with a clear cup in his hand and get into his car. Corporal Necessary gave a description of the car and its location and asked Officer Williams to check on this individual. Corporal Necessary did not tell Officer Williams that he believed the Defendant to be impaired. There was nothing about the manner in which the Defendant was walking that gave Corporal Necessary reason to believe that Defendant was impaired.

There was nothing about the Defendant's physical appearance or his dress that gave Corporal Necessary reason to believe that the Defendant was impaired.

4.   There are a number of bars and eating establishments that serve alcohol in the area where Corporal Necessary observed the Defendant, but Corporal Necessary did not see the Defendant leaving any such establishment.

5.   Based on the information supplied by Corporal Necessary, Officer Williams turned his bicycle around and drove against traffic so he could check on the individual and the vehicle described by Corporal Necessary. Officer Williams drove slowly by the vehicle and peered into the inside of the targeted vehicle. The vehicle was occupied by the Defendant who was seated on the driver's side behind the wheel. . . . . There was conflicting testimony as to whether Officer Williams saw anything in the Defendant's hand as he drove by. Officer Williams testified he saw a cup in the Defendant's hand as he was sitting in the car. However, Corporal Necessary testified that Officer Williams told him he did not see anything in the Defendant's hand as he passed by the vehicle. As Officer Williams looked inside the vehicle, he noted that the Defendant had a cup in his hand. The lights of the vehicle were on and the engine was running.

6.   After Officer Williams passed by the Defendant on his police bicycle, the Defendant and the passenger exited the vehicle and began walking down the sidewalk. According to Officer Williams, the Defendant did not have a cup in his hand as he was walking down the street. According to Corporal Necessary, the Defendant did have a cup in his hand as he was walking down the street. Although Officer Williams gave conflicting testimony as to whether he observed the Defendant's vehicle parked illegally, the Defendant never moved his vehicle and there were no readily observable motor vehicle law violations that occurred in the presence of either Officer.

7.   On the question of whether the Defendant has a cup in his hand as he was walking down the street after exiting the vehicle, the Court is of the view that the defendant did have a cup in his hand after he exited the vehicle.

STATE v. KNUDSEN

[229 N.C. App. 271 (2013)]

8. After observing the Defendant walk down the sidewalk, Officer Williams moved his police bicycle from the roadway to the pedestrian sidewalk in an effort to initiate contact with the Defendant. The Officer positioned his bicycle in such a way as to block the Defendant's normal path of travel as a pedestrian on the sidewalk. At the time Officer Williams initiated contact with the Defendant, he was wearing a police uniform with the word, "Police" in reflective tape on the back. On the front of the uniform is a badge with Officer Williams['] name and the words "Bike Patrol". The Officer was wearing a helmet with the word "Police" in white decals. The officer was carrying a velcro bag with all the equipment, citations, accident book and other paperwork that an officer would need. The velcro bag also had the word "Police" on it. The officer was dressed for court just as he was dressed on the date and time in question and part of the officer's dress included a police issued firearm. . . .

9. At the same time that Officer Williams initiated contact with the Defendant, Corporal Necessary pulled his patrol car directly behind Officer Williams. Officer Williams purpose in initiating contact with the Defendant was to make a determination as to whether there was any alcohol in the cup that the Defendant was holding. As the Defendant and his companion were approaching a parking lot, which would have been their normal path of travel, the entrance to the parking lot was blocked by Officer Williams who had dismounted his bicycle. Likewise, Corporal Necessary positioned his marked patrol vehicle at an angle so as to block the entrance to the parking lot.

10. As the Defendant and the passenger approached the parking lot, Officer Williams dismounted his bicycle and initiated contact with Defendant. The contact consisted of asking the Defendant "what is in the cup?" At the time Officer Williams asked the Defendant what is in the cup, he was within arms' length of the Defendant. At the time Officer Williams asked the Defendant what was in the cup, he did not detect any odor of alcohol coming from the cup, nor did he notice an order of alcohol coming from the Defendant. The Defendant handed the cup to Officer Williams and told

him it was water. Officer Williams smelled the liquid, and discovered the cup, in fact, contained water.

11. Corporal Necessary pulled in behind the Defendant's car and did not detect any signs of impairment as the Defendant was walking towards Officer Williams. Corporal Necessary has investigated over 1400 driving while impaired cases since 1989.

12. The Defendant was stopped only because he was walking on the sidewalk with a cup in his hand with clear liquid in it and the officers wanted to know what was in the cup.[1] (original footnotes omitted).

The first challenged finding of fact is a portion of finding of fact number eight, which states in relevant part: "[Officer Williams] positioned his bicycle in such a way as to block . . . Defendant's normal path of travel as a pedestrian on the sidewalk." The testimony presented at the motion hearing regarding the position of Officer Williams and his bicycle on the sidewalk consisted of the following:

Officer Williams testified that, after riding past the Defendant's vehicle and looking inside, "I turned around and straddled my bicycle, right at the entrance to the parking lot." Officer Williams testified that he stopped at the entrance to the parking lot to "be able to contact Officer Necessary to let him know I did see the vehicle he had in question and I could see the two individuals in it." Officer Williams then testified: "While all that was transpiring, [Defendant and his companion] exited the vehicle and started walking north on Trade Street towards my direction. I dismounted my bicycle, had my bicycle on the sidewalk." As Officer Williams was clarifying his testimony, he stated further:

> When I got down to the parking lot . . . and stopped my bicycle, they got out of the [vehicle] then, when I stopped down at the parking lot. They got out of the vehicle, got on the sidewalk, and walked towards me, down towards my location. And when they got to my location, I asked [Defendant], "What do you have in your cup?" And he said, "Water."

---

1. We have omitted some portions of the findings of fact in the trial court's 11 January 2013 order, including some specifically challenged by the State. The omitted portions are irrelevant to our analysis of the issues on appeal and, due to their irrelevancy, we express no opinion as to their validity.

STATE v. KNUDSEN

[229 N.C. App. 271 (2013)]

Officer Williams also stated: "I was astraddle of my bicycle when they walked down the street towards me."

Regarding the positioning of the bicycle on the sidewalk, Corporal Necessary testified that "Officer Williams . . . was straddling his bicycle at some distance behind . . . [Defendant's vehicle], probably two or three car lengths behind the [vehicle], next to the sidewalk at an entrance to the parking lot."

This testimony serves as competent evidence to support finding of fact number eight. Both officers testified that Officer Williams and his bicycle were on the sidewalk and at the entrance to the parking lot. Both officers testified that Defendant and the other male walked on the sidewalk, toward Officer Williams, until they reached Officer Williams, who then questioned Defendant. While there is conflicting evidence concerning whether Officer Williams and his bicycle were next to the sidewalk, or on the sidewalk, at a suppression hearing the trial court is tasked with weighing the testimony and deciding the facts. The trial court enjoys the benefit of live testimony, and we hold that its characterization of the incident, embodied in its findings of fact, represents a fair weighing of the testimony. The State's contention that there exists no competent evidence to support finding of fact number eight is without merit; thus, we hold that finding of fact number eight is binding on appeal.

The State next challenges finding of fact number nine, which reads in relevant part:

> As the Defendant and his companion were approaching a parking lot, which would have been their normal path of travel, the entrance to the parking lot was blocked by Officer Williams who had dismounted his bicycle. Likewise, Corporal Necessary positioned his marked patrol vehicle at an angle so as to block the entrance to the parking lot.

We hold that the wording of the first portion of finding of fact number nine is unclear. It is uncertain whether the trial court meant to find that Defendant's normal path of travel was on the sidewalk and in the direction of the parking lot, or whether the trial court meant to find that the parking lot itself was Defendant's normal path of travel. To the extent that finding of fact number nine states that Defendant was walking on the sidewalk in the direction of the parking lot, this finding is clearly supported by the evidence and testimony. To the extent, if at all, the trial court intended to find that Defendant's normal path of travel was the parking lot itself, it is unsupported by competent evidence and is not binding on appeal.

However, we hold that the remaining challenged portions of finding of fact number nine are both clear and supported by competent evidence. Officer Williams testified that he stopped his bicycle at the entrance to the parking lot to be able to contact Corporal Necessary. Corporal Necessary, in stating that he observed Officer Williams straddling his bicycle next to the sidewalk and at the entrance to the parking lot, corroborated this testimony. This testimony is competent evidence that supports the finding that the entrance to the parking lot was blocked by Officer Williams. Likewise, Corporal Necessary testified that, when he saw Defendant get out of the vehicle and begin to walk towards Officer Williams, Corporal Necessary "drove down, faced towards the entrance to the parking lot, at an angle, and stopped and got out." Corporal Necessary stated that he parked his cruiser "[n]ot in the parking lot," but rather that his cruiser "was turned at an angle, facing southwest at an angle, with the front of [the cruiser] at the entrance to the parking lot." This is competent evidence that Corporal Necessary parked his patrol vehicle at an angle and blocked access to the parking lot.

The State next contends that finding of fact number twelve is unsupported by competent evidence. Finding of fact number twelve states that Defendant was only stopped "because he was walking on the sidewalk with a cup in his hand with clear liquid in it and the officers wanted to know what was in the cup." We hold that, while there was conflicting testimony suggesting that the officers may have taken other factors into account, there was competent evidence to support finding of fact number twelve.

On cross-examination by Defendant's counsel, Officer Williams answered in the affirmative when asked if "[t]he only thing" he knew about Defendant was "that he had a cup in his hand that [Defendant] said contained water." Although Officer Williams testified that Defendant's face appeared flushed, Officer Williams admitted that he did not know why Defendant's face appeared flushed, did not know where Defendant had been, and did not know where Defendant was going. Similarly, Corporal Necessary admitted that, before Officer Williams asked Defendant what was in the cup, Corporal Necessary did not know where Defendant had come from, where he was going, what he was doing downtown, whether he worked downtown, what was in the cup, or why he had gotten into the vehicle. This testimony was competent evidence upon which the trial court made finding of fact number twelve. This finding is therefore binding on appeal.

III.

[2] The State next argues that the trial court erred by concluding that Defendant was seized within the meaning of the Fourth Amendment. Based on the findings of fact, the following conclusions of law relevant to this appeal were entered by the trial court:

> 3.  On July 28, 2011, . . . Defendant was unlawfully seized and detained under the 4th Amendment to the United States Constitution because Officer Williams and Corporal Necessary lacked reasonable suspicion to block . . . Defendant's normal path of travel as a pedestrian.
>
> 6.  Based upon the totality of the circumstances faced by . . . Defendant on the date and time in question, a reasonable person would not have felt free to go about his business and ignore two officers who had every intention of stopping . . . Defendant and making an inquiry as to whether the clear plastic cup containing clear liquid was something other than water.
>
> 7.  There was no reasonable suspicion to stop . . . Defendant from traveling down the road as a pedestrian to make inquiry about what may or may not have been in . . . Defendant's cup. For purposes of fourth amendment analysis, the action of Officer Williams and Corporal Necessary constituted a show of force and a restraint on . . . Defendant's movement such that that [sic] a reasonable person would not feel free to ignore Officer Williams['] question. The encounter between the two officers and . . . Defendant was not a voluntary consensual encounter between the police and a citizen. Instead, the encounter in question constitutes a violation of . . . Defendant's 4th Amendment right to be free from an unreasonable seizure and subsequent interrogation.

A trial court's conclusions of law on a motion to suppress are reviewed *de novo* and are subject to a full review, under which this Court considers the matter anew and freely substitutes its own judgment for that of the trial court. *State v. Royster*, ___ N.C. App. ___, ___, 737 S.E.2d 400, 403 (2012) (citing *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011)). The conclusions of law "must be legally correct, reflecting a correct application of applicable legal principles to the facts found." *State v. Fernandez*, 346 N.C. 1, 11, 484 S.E.2d 350, 357 (1997) (citing

*State v. Payne*, 327 N.C. 194, 208-09, 394 S.E.2d 158, 166 (1990)). We hold that the relevant binding findings of fact support the trial court's relevant conclusions of law.

The United States Supreme Court has held that a law enforcement officer does not offend the Fourth Amendment merely by approaching an individual in a public place and by putting questions to him. *Florida v. Royer*, 460 U.S. 491, 497, 75 L. Ed. 2d 229, 236 (1983). However, a person is seized under the Fourth Amendment when, "by means of physical force or a show of authority," the defendant's freedom of movement is restrained. *State v. Farmer*, 333 N.C. 172, 187, 424 S.E.2d 120, 129 (1993) (quoting *United States v. Mendenhall*, 446 U.S. 544, 553, 64 L. Ed. 2d 497, 509 (1980)).

As there was no physical force employed by Officer Williams or Corporal Necessary to restrain Defendant in this case, a seizure occurred if, "taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *State v. Williams*, 201 N.C. App. 566, 569, 686 S.E.2d 905, 907 (2009) (quoting *Florida v. Bostick*, 501 U.S. 429, 437, 115 L. Ed. 2d 389, 400 (1991)) (internal quotation marks omitted).

When there has been no physical force or attempt to leave, examples of circumstances that might indicate a seizure include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Kaupp v. Texas*, 538 U.S. 626, 630, 155 L. Ed. 2d 814, 820 (2003) (citing *Mendenhall*, 446 U.S. at 554, 64 L. Ed. 2d at 509). Several North Carolina Supreme Court opinions have also found the fact that an officer was in uniform to be a significant factor to consider when determining whether a seizure has occurred. *See, e.g.*, *State v. Icard*, 363 N.C. 303, 310, 677 S.E.2d 822, 827 (2009) (noting that an officer was in uniform while conducting a seizure analysis).

We are mindful of the United States Supreme Court's holding that an encounter between police and a defendant "will not trigger Fourth Amendment scrutiny unless it loses its consensual nature." *Bostick*, 501 U.S. at 434, 115 L. Ed. 2d at 398. In the present case, the encounter began with Corporal Necessary slowly passing by Defendant's vehicle, stopping just over a car length beyond, and talking with another officer. Both officers were wearing police uniforms and wore weapons as part of those uniforms. After Corporal Necessary passed by Defendant for

a second time, Officer Williams, at Corporal Necessary's request, rode past Defendant's vehicle against traffic and "made it obvious" that he was looking into Defendant's vehicle. After observing Defendant walk down the sidewalk towards him and, in an effort to initiate contact with Defendant, Officer Williams rode his bicycle a short distance away, and then moved his bicycle from the street onto the sidewalk. When Officer Williams took this action, he was a short "two or three car lengths away" from Defendant's vehicle. Upon noticing Defendant get out of the vehicle and start walking towards Officer Williams, Corporal Necessary pulled his police cruiser onto the sidewalk and at an angle to the entrance to the parking lot and, by doing so, blocked the entrance to the parking lot.

Officer Williams was on the sidewalk, with his bicycle, impeding Defendant's continued movement along the sidewalk. Corporal Necessary, by parking his cruiser behind Officer Williams, with the front of the cruiser at the entrance of the parking lot, he necessarily blocked the sidewalk with his cruiser. Corporal Necessary exited the cruiser and joined Officer Williams on the sidewalk, directly in Defendant's path of travel. Officer Williams then demanded of Defendant, "what do you have in the cup," which in the context of the entire encounter constituted "police conduct [which] would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Williams*, 201 N.C. App. at 569, 686 S.E.2d at 907 (citation omitted).

We also note that, along with the great deference we give to the trial court to hear testimony and find facts, in the present case, the trial court was in a better position to review evidence that is not accessible and reviewable by this Court on appeal; namely, whatever demonstration was given by Corporal Necessary as to the positioning of himself and his police cruiser on the sidewalk.[2] "[I]t is the *appellant* who has the burden in the first instance of demonstrating error from the record on appeal." *State v. Adams*, 335 N.C. 401, 409, 439 S.E.2d 760, 764 (1994) (emphasis in original); *see also State v. Milby and State v. Boyd*, 302 N.C. 137, 141, 273 S.E.2d 716, 719 (1981) (holding that the appellant must "make the irregularity manifest" before it can be considered a basis for prejudicial error). It is the State, as appellant, who has the burden to make any alleged errors by the trial court part of the record on appeal and thus

---

2. As noted *supra*, when Corporal Necessary testified at the motion hearing concerning is movements, he stated: "It's kind of hard to explain. *I'll show you.* This is the entrance to the parking lot. I'm in this lane. I drove down, faced towards the entrance to the parking lot, at an angle, and stopped and got out" (emphasis added). Whatever demonstration Corporal Necessary did as part of his testimony is not part of the record on appeal.

reviewable by this Court. In absence of such evidence, an appeal will fail "to overcome the presumption of correctness at trial." *State v. Ali*, 329 N.C. 394, 412, 407 S.E.2d 183, 194 (1991).

We hold that the totality of the circumstances, discernible from the record on appeal, shows no error by the trial court in concluding that Defendant was seized within the meaning of the Fourth Amendment to the United States Constitution.

IV.

[3] In its final contention, the State asserts that the trial court erred in granting Defendant's motion to suppress because even if a seizure of Defendant occurred, the seizure was supported by a reasonable articulable suspicion that criminal activity was being committed, and Defendant's Fourth Amendment rights were therefore not violated. We disagree.

A reasonable suspicion has been defined by the United States Supreme Court as "some minimal level of objective justification." *INS v. Delgado*, 466 U.S. 210, 217, 80 L. Ed. 2d 247, 255 (1984). In order to meet the reasonable suspicion threshold, "[t]he officer, of course, must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." *United States v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 27, 20 L. Ed. 889, 909 (1968)) (internal quotation marks omitted). "The concept of reasonable suspicion . . . is not 'readily, or even usefully, reduced to a neat set of legal rules.' " *Sokolow*, 490 U.S. at 7, 104 L. Ed. 2d at 10 (citation omitted). Rather, in determining if reasonable suspicion existed, the Court must account for "the totality of the circumstances the whole picture." *United States v. Cortez*, 449 U.S. 411, 417, 66 L. Ed. 2d 621, 629 (1981).

We hold that the totality of the circumstances of this case does not rise to the minimal level of objective justification required for a reasonable articulable suspicion under the Fourth Amendment. Officer Williams and Corporal Necessary observed Defendant walking down the sidewalk with a clear plastic cup in his hands filled with a clear liquid. Defendant entered his vehicle, remained in it for a period of time, and then exited his vehicle, and began walking down the sidewalk, where he was stopped by the officers. Finding of fact twelve, which we deemed to be supported by competent evidence and therefore binding on appeal, states that Officer Williams and Corporal Necessary stopped and questioned Defendant "only because he was walking on the sidewalk with a

cup in his hand with clear liquid in it" and the officers wanted to know what was in the cup.

We hold that the officers had, at most, an inchoate and unparticularized hunch that Defendant was involved in some form of criminal activity. Defendant's actions did not give rise to the minimal level of objective justification required by the Fourth Amendment; therefore, the trial court did not err in granting Defendant's suppression motion.

Affirmed.

Judges STEELMAN and ERVIN concur.