IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-148

 No. COA20-171

 Filed 20 April 2021

 Pitt County, No. 17 CRS 55384

 STATE OF NORTH CAROLINA

 v.

 JODY RAYE STEELE, Defendant.

 Appeal by Defendant from an order entered on 10 January 2020 and judgment

 entered on 25 October 2019 by Judge J. Carlton Cole in Pitt County Superior Court.

 Heard in the Court of Appeals 27 January 2021.

 Attorney General Joshua H. Stein, by Assistant Attorney General Nora F.
 Sullivan, for the State.

 The Robinson Law Firm, P.A., by Leslie S. Robinson, for the Defendant.

 JACKSON, Judge.

¶1 The issue in this case is whether a driver is “seized” within the meaning of the

 Fourth Amendment when he is tailed by a marked police cruiser down empty streets

 at 3 a.m., followed into an empty parking lot, and then hailed down by the officer’s

 hand gestures. Because we conclude that no reasonable person would believe he was

 free to go under such circumstances, we hold that Defendant was seized for purposes

 of the Fourth Amendment and that the trial court erred in denying his motion to
 STATE V. STEELE

 2021-NCCOA-148

 Opinion of the Court

 suppress.

 I. Factual and Procedural Background

¶2 Our only record of what occurred on the night of Defendant’s arrest comes from

 the testimony of Officer Michael Plummer of the East Carolina University ("ECU”)

 Police Department and a partial video of the stop. During the suppression hearing,

 Officer Plummer described his encounter with Defendant, which occurred in the early

 morning hours of 2 August 2017 while he was on patrol duty in Greenville, North

 Carolina. Officer Plummer was uniformed and driving in his patrol car that night,

 which had light strips and insignias identifying it as an ECU Police Department

 vehicle.

¶3 At 2:50 a.m., Officer Plummer received a dispatch advising that the county

 police were requesting assistance for a vehicle crash on Charles Boulevard, and began

 heading that way. As he was traveling south on Charles Boulevard, approaching the

 intersection of Charles and 14th Street, he noticed a yellow Camaro make a left turn

 from 14th Street and turn onto Charles heading south (the same direction he was

 heading in his cruiser). There was no other traffic on the road at that time—just the

 yellow Camaro, and Officer Plummer traveling behind it. He testified that he noticed

 that the Camaro “appeared to have its daytime running lights on” but that “no rear

 lights were illuminated.”

¶4 Officer Plummer began following the Camaro as it proceeded south down
 STATE V. STEELE

 2021-NCCOA-148

 Opinion of the Court

 Charles and made another left onto Ficklen Drive, at the same time radioing dispatch

 to ascertain whether or not the Camaro might have been involved in the accident. He

 continued following the Camaro down Ficklen Drive as it pulled into an on-campus

 parking lot. The parking lot was totally empty when the two vehicles arrived.

¶5 Once inside the parking lot, Officer Plummer observed the Camaro as it “made

 a u-turn” and began circling back towards the parking lot entrance. At that point,

 Officer Plummer approached the Camaro, driving toward it as the Camaro was

 headed the opposite direction out of the lot. Officer Plummer pulled up close enough

 that the cars were positioned “driver’s door to driver’s door,” approximately three to

 four feet apart. As he was positioning his vehicle, Officer Plummer also rolled down

 his window and “stuck [his] hand out the car to flag [the driver of the Camaro] down.”

 Specifically, Officer Plummer stated that he “rested [his] forearm on the door – on the

 window frame and waved [his] hand up and down.” As he reached the driver’s door

 of the Camaro and gestured, both vehicles “mutually came to a stop.” At this point

 he had not activated his blue lights or siren.

¶6 Officer Plummer then began speaking with the driver to see “if he had possibly

 been through the area and seen anything in relation to the vehicle crash.” After

 Defendant replied, Officer Plummer began to suspect that Defendant had been

 drinking. He then asked Defendant to get out of the vehicle, performed several field

 sobriety tests, and eventually arrested and cited Defendant for impaired driving.
 STATE V. STEELE

 2021-NCCOA-148

 Opinion of the Court

¶7 On 2 March 2018, Defendant filed a motion to suppress in Pitt County District

 Court, challenging the stop of his vehicle as an unlawful seizure and detention. The

 district court ultimately denied his motion to suppress, and on 17 April 2019 he was

 found guilty of impaired driving and sentenced to twelve months of unsupervised

 probation in addition to a sixty-day suspended sentence. Defendant appealed the

 district court’s judgment to Pitt County Superior Court on 18 April 2019. On 23 May

 2019, Defendant filed a new motion to suppress in the superior court, again

 challenging the stop of his vehicle as an unlawful seizure and detention. The superior

 court heard arguments on Defendant’s motion to suppress on 25 October 2019.

 Officer Plummer was the only witness who testified at the hearing.

¶8 At the conclusion of the hearing, the trial court determined that the encounter

 between Defendant and Officer Plummer was not a traffic stop, because Officer

 Plummer had not indicated to Defendant that he was not free to leave. The trial court

 accordingly denied Defendant’s motion to suppress. Defense counsel then announced

 Defendant’s intent (which had been previously communicated to the State) to enter a

 guilty plea following the denial of his motion to suppress. Defendant subsequently

 pleaded guilty to driving while impaired. The trial court again imposed a suspended

 sixty-day sentence and placed Defendant on unsupervised probation for twelve

 months.

¶9 Defendant gave oral notice of appeal in open court and filed a written notice of
 STATE V. STEELE

 2021-NCCOA-148

 Opinion of the Court

appeal with this Court on 4 November 2019. On 10 January 2020, the trial court

entered a written order denying Defendant’s motion to suppress that included the

following pertinent Findings of Fact:

 4. That Officer Plummer saw the Defendant’s vehicle
 and observed that the Defendant’s vehicle appeared to
 have its daytime running lights on for the headlights, but
 the rear lights were not illuminated.

 5. That the lack of illuminated rear lights on the
 Defendant’s vehicle drew Officer Plummer’s attention to
 the vehicle.

 ....

 13. That after Officer Plummer followed the Defendant’s
 vehicle into the parking lot, the Defendant’s vehicle made
 a U-turn and began traveling towards Officer Plummer’s
 vehicle.

 14. That Officer Plummer drove driver’s door to driver’s
 door with the Defendant’s vehicle, with Officer Plummer’s
 vehicle facing the opposite direction as the Defendant’s
 vehicle.

 15. That as Officer Plummer pulled alongside the
 Defendant’s vehicle, Officer Plummer extended his hand
 out of his driver’s window, rested his forearm on his
 driver’s door, and waved his hand up and down.

 16. That Officer Plummer testified that his intention
 was to engage in a voluntary consensual conversation with
 the Defendant.

 17. That as Officer Plummer reached the driver’s door of
 the Defendant’s vehicle, both vehicles came to a stop and
 the Defendant rolled down his window.
 STATE V. STEELE

 2021-NCCOA-148

 Opinion of the Court

...

19. That Officer Plummer was approximately three to
four feet away from the Defendant as they spoke.

20. That at the time Defendant stopped his vehicle and
engaged in a conversation with Officer Plummer, no other
officers or patrol vehicles were on scene.

21. That at the time Defendant stopped his vehicle and
engaged in a conversation with Officer Plummer, Officer
Plummer had not engaged his blue lights or siren.

22. That at the time Defendant stopped his vehicle and
engaged in a conversation with Officer Plummer, Officer
Plummer had not positioned his patrol vehicle in a manner
that would obstruct the Defendant’s vehicle from exiting
the parking lot nor restrict his movement in any way.

23. That at the time Defendant stopped his vehicle and
engaged in a conversation with Officer Plummer, Officer
Plummer had not directed the Defendant to get out of the
Defendant’s vehicle nor restricted the Defendant’s freedom
of movement in any way.

24. That at the time Defendant stopped his vehicle and
engaged in a conversation with Officer Plummer, Officer
Plummer had not indicated to the Defendant that the
Defendant was in custody or that the Defendant was not
free to leave.

25. That at the time Defendant stopped his vehicle and
engaged in a conversation with Officer Plummer, Officer
Plummer had not exited his patrol vehicle, taken any
enforcement action, given any orders or commands to the
Defendant, nor displayed any weapon or demonstrated any
other show of authority to indicate that this was a traffic
stop.

26. That during the conversation with the Defendant,
 STATE V. STEELE

 2021-NCCOA-148

 Opinion of the Court

 Officer Plummer observed factors that ultimately led
 Officer Plummer to investigate and arrest the Defendant
 for Driving While Impaired.

 Based on these findings, the trial court concluded as a matter of law:

 4. That pursuant to State v. Wilson, this Court has
 considered the factors that Officer Plummer was alone
 when he encountered the Defendant, that Officer Plummer
 did not draw his weapon, that Officer Plummer did not
 activate his lights or siren on his patrol car, that Officer
 Plummer did not do or say anything to indicate to the
 Defendant that the Defendant was required to stop, and
 that the Defendant was in the Defendant’s own vehicle and
 could have driven around Officer Plummer’s patrol car.

 5. That Officer Plummer had not initiated a traffic
 stop at the time of his conversation with the Defendant.

 6. That Officer Plummer’s conversation with the
 Defendant was a voluntary, consensual conversation
 between Officer Plummer and the Defendant at a time
 when the Defendant’s freedom of movement was not
 restricted, and Officer Plummer had made no show of
 authority to indicate that the interaction was a traffic stop
 or that the Defendant was under arrest.

 7. That the Defendant was not seized under the Fourth
 Amendment when he voluntarily stopped his own vehicle
 in the parking lot next to Officer Plummer’s patrol vehicle
 and began conversing with Officer Plummer.

 II. Analysis

 A. Standard of Review

¶ 10 On appeal of an order denying a motion to suppress, we conduct a two-part

 review: (1) to determine whether there is “competent evidence” to support the trial
 STATE V. STEELE

 2021-NCCOA-148

 Opinion of the Court

 court’s findings of fact, and (2) to determine whether “those factual findings in turn

 support the judge’s ultimate conclusions of law.” State v. Cooke, 306 N.C. 132, 134,

 291 S.E.2d 618, 619 (1982). If the findings of fact are supported by substantial

 competent evidence, then they are binding on appeal. State v. Gabriel, 192 N.C. App.

 517, 519, 665 S.E.2d 581, 584 (2008). However, the trial court’s conclusions of law

 are reviewed de novo. State v. Edwards, 185 N.C. App. 701, 702, 649 S.E.2d 646, 648

 (2007).

 B. Challenged Findings of Fact

¶ 11 Defendant raises several challenges to the findings of fact contained in the trial

 court’s order. Defendant first challenges Finding of Fact 16, which states that

 “Officer Plummer testified that his intention was to engage in a voluntary consensual

 conversation with the Defendant.” Defendant contends that this is not a proper

 finding of fact because it does nothing more than recite the testimony of a witness.

 We agree.

¶ 12 As our Supreme Court has previously held, although “recitations of testimony

 may properly be included in an order denying suppression, they cannot substitute for

 findings of fact resolving material conflicts.” State v. Lang, 309 N.C. 512, 520, 308

 S.E.2d 317, 321 (1983). In other words, when there is a material conflict in the

 evidence regarding a certain issue, it is improper for the trial court to make findings

 which “do not resolve conflicts in the evidence but are merely statements of what a
 STATE V. STEELE

 2021-NCCOA-148

 Opinion of the Court

 particular witness said.” Id. See also Huffman v. Moore Cty., 194 N.C. App. 352, 359,

 669 S.E.2d 788, 792-93 (2008) (holding that factual findings are improper when they

 “merely recite or summarize witness testimony” but do not actually state what the

 court “finds the facts to be”).

¶ 13 Here, there was a material conflict in the evidence regarding whether or not

 Officer Plummer’s encounter with Defendant was a “voluntary consensual

 conversation” or was instead a traffic stop—in fact, this is the primary issue of

 contention in this case as a whole. Officer Plummer maintains that his flagging down

 of Defendant in the parking lot was a non-coerced, consensual encounter; while

 Defendant maintains that any reasonable person would realize that this was a

 compulsory traffic stop. Accordingly, due to this material conflict it was improper for

 the trial court to make findings that simply summarized the testimony of Officer

 Plummer on this key issue. We hold that Finding of Fact 16 does not support the

 trial court’s conclusions of law because it does not resolve a material conflict in the

 evidence.

¶ 14 Defendant also challenges Findings of Fact 24 and 25, which provide as follows:

 24. That at the time the Defendant stopped his vehicle
 and engaged in a conversation with Officer Plummer,
 Officer Plummer had not indicated to the Defendant that
 the Defendant was in custody or that the Defendant was
 not free to leave.

 25. That at the time the Defendant stopped his vehicle
 STATE V. STEELE

 2021-NCCOA-148

 Opinion of the Court

 and engaged in a conversation with Officer Plummer,
 Officer Plummer had not exited his patrol vehicle, taken
 any enforcement action, given any orders or commands to
 the Defendant, nor displayed any weapon or demonstrated
 any other show of authority to indicate that this was a
 traffic stop.

¶ 15 We agree with Defendant that these two factual findings are improper because

 they are in reality mislabeled conclusions of law. As we have previously explained,

 any finding which requires “the exercise of judgment or the application of legal

 principles is more properly classified as a conclusion of law.” Lamm v. Lamm, 210

 N.C. App. 181, 189, 707 S.E.2d 685, 691 (2011) (internal marks and citation omitted).

 Consequently, “[a] finding of fact that is essentially a conclusion of law will be treated

 as a fully reviewable conclusion of law on appeal”—and will be subjected to de novo

 review. Id.

¶ 16 Here, findings 24 and 25 encompass two important conclusions of law—

 namely, whether or not Officer Plummer had indicated to Defendant that he was free

 to leave; and whether or not Officer Plummer had made a show of authority to

 indicate that this was a traffic stop. Both of these conclusions involve the exercise of

 judgment and the application of legal principles under the Fourth Amendment. Thus,

 findings 24 and 25 must be treated as conclusions of law and subjected to de novo

 review. Accordingly, we review these two findings in the subsequent section of this

 opinion, together with the trial court’s other conclusions of law.
 STATE V. STEELE

 2021-NCCOA-148

 Opinion of the Court

¶ 17 Finally, Defendant challenges a set of findings involving the operation of his

 vehicle’s headlights. Specifically, Findings of Fact 4 and 5 provide:

 4. That Officer Plummer saw the Defendant’s vehicle
 and observed that the Defendant’s vehicle appeared to
 have its daytime running lights on for the headlights, but
 the rear lights were not illuminated.

 5. That the lack of illuminated rear lights on the
 Defendant’s vehicle drew Officer Plummer’s attention to
 the vehicle.

¶ 18 Defendant asserts that these findings are both inaccurate because the record

 contains irrefutable evidence contradicting Officer Plummer’s testimony that the

 Camaro had no functioning rear lights. Most notably, Defendant points to the fact

 that the Camaro was a new vehicle with automatic lights; and the video footage of

 his arrest which shows that the Camaro’s headlights and rear lights were illuminated

 as soon as the vehicle was turned on.

¶ 19 Though we are inclined to agree with Defendant that findings 4 and 5 are

 unsupported by the record, ultimately there is no need to analyze these findings

 because they are not dispositive to the question of whether Defendant was seized at

 the relevant time within the meaning of the Fourth Amendment. The issue of

 whether Defendant’s taillights were illuminated is irrelevant because the trial court’s

 ruling did not turn on whether Officer Plummer had reasonable suspicion to pull over

 Defendant for a traffic stop. Instead, as explained below, the dispositive issue is
 STATE V. STEELE

 2021-NCCOA-148

 Opinion of the Court

 whether this encounter qualified as a traffic stop at all (as opposed to a voluntary

 encounter which did not implicate the Fourth Amendment).

 C. Challenged Conclusions of Law—Motion to Suppress

¶ 20 Defendant argues that the trial court erred in denying his motion to suppress,

 contending that the traffic stop initiated by Officer Plummer was an unreasonable

 seizure under the Fourth Amendment. The trial court made the following conclusions

 of law in determining that Defendant was not seized by Officer Plummer under the

 Fourth Amendment:

 2. That the only matter before this Court is whether
 the Defendant was seized under the Fourth Amendment
 when he voluntarily stopped his own vehicle in the parking
 lot next to Officer Plummer’s patrol vehicle and began
 conversing with Officer Plummer; and if so, whether the
 seizure was lawful.

 3. That the Court has reviewed and considered State v.
 Wilson, 793 S.E.2d 737 (2016), in making its findings and
 conclusions.

 4. That pursuant to State v. Wilson, this Court has
 considered the factors that Officer Plummer was alone
 when he encountered the Defendant, that Officer Plummer
 did not draw his weapon, that Officer Plummer did not
 activate his lights or siren on his patrol car, that Officer
 Plummer did not do or say anything to indicate to the
 Defendant that the Defendant was required to stop, and
 that the Defendant was in the Defendant’s own vehicle and
 could have driven around Officer Plummer’s patrol car.

 5. That Officer Plummer had not initiated a traffic stop
 at the time of his conversation with the Defendant.
 STATE V. STEELE

 2021-NCCOA-148

 Opinion of the Court

 6. That Officer Plummer’s conversation with the
 Defendant was a voluntary, consensual conversation
 between Officer Plummer and the Defendant at a time
 when the Defendant’s freedom of movement was not
 restricted, and Officer Plummer had made no show of
 authority to indicate that the interaction was a traffic stop
 or that the Defendant was under arrest.

 7. That the Defendant was not seized under the Fourth
 Amendment when he voluntarily stopped his own vehicle
 in the parking lot next to Officer Plummer’s patrol vehicle
 and began conversing with Officer Plummer.

¶ 21 Ultimately, we agree with Defendant that the trial court erred in concluding

 that the encounter between himself and Officer Plummer was not a seizure under the

 Fourth Amendment. The Fourth Amendment of the United States Constitution

 protects “the right of the people to be secure . . . against unreasonable searches and

 seizures.” U.S. Const. amend IV. Article I, § 20 of the North Carolina Constitution

 likewise “protect[s] against unreasonable searches and seizures.” State v. Otto, 366

 N.C. 134, 136, 726 S.E.2d 824, 827 (2012). “Fourth Amendment rights are enforced

 primarily through ‘the exclusionary rule,’ which provides that evidence derived from

 an unconstitutional search or seizure is generally inadmissible in a criminal

 prosecution of the individual subjected to the constitutional violation.” State v.

 McKinney, 361 N.C. 53, 58, 637 S.E.2d 868, 872 (2006).

¶ 22 It is well-established that “a traffic stop is considered a ‘seizure’ within the

 meaning of” both the federal and state constitutions, and that a traffic stop is only
 STATE V. STEELE

 2021-NCCOA-148

 Opinion of the Court

 constitutional if supported by reasonable suspicion. Otto, 366 N.C. at 136-37, 726

 S.E.2d at 827. However, the issue in this case is not whether Officer Plummer had

 reasonable suspicion to stop Defendant—rather, the issue is whether the encounter

 between Defendant and Officer Plummer was a traffic stop (i.e., a seizure) at all.

¶ 23 Not every interaction between citizens and law enforcement constitutes a

 seizure. The United States Supreme Court has “repeatedly held that mere police

 questioning does not constitute a seizure.” Florida v. Bostick, 501 U.S. 429, 434

 (1991). See also State v. Brooks, 337 N.C. 132, 141, 446 S.E.2d 579, 585 (1994)

 (internal marks and citation omitted) (explaining that “communication between the

 police and citizens involving no coercion or detention” does not constitute a seizure).

 Thus, officers do not violate the Fourth Amendment “merely by approaching

 individuals on the street or in other public places and putting questions to them if

 they are willing to listen.” State v. Isenhour 194 N.C. App. 539, 542, 670 S.E.2d 264,

 267 (2008) (internal marks and citation omitted).

¶ 24 In contrast, a seizure occurs “when the officer, by means of physical force or

 show of authority, has in some way restrained the liberty of a citizen.” Terry v. Ohio,

 392 U.S. 1, 20 n. 16 (1968). See also State v. West, 119 N.C. App. 562, 566, 459 S.E.2d

 55, 58 (1995) (“A seizure does not occur until there is a physical application of force

 or submission to a show of authority.”). Here, Defendant is not contending that

 Officer Plummer used a physical application of force to stop his vehicle—but rather
 STATE V. STEELE

 2021-NCCOA-148

 Opinion of the Court

 that Officer Plummer made a show of authority which compelled him to stop.

¶ 25 A show of authority constitutes a seizure when “under the totality of the

 circumstances a reasonable person would feel that he was not free to decline the

 officers’ request or otherwise terminate the encounter.” Brooks, 337 N.C. at 142, 446

 S.E.2d at 586. See also Bostick, 501 U.S. at 437 (a show of authority occurs when the

 officer’s conduct “would have communicated to a reasonable person that he was not

 at liberty to ignore the police presence and go about his business”) (internal marks

 and citation omitted). When a sufficient show of authority is made, it is possible for

 an officer to seize a person without ever laying hands on that person. See California

 v. Hodari D., 499 U.S. 621, 626 (1991) (noting that when there is “an assertion of

 authority” by an officer, “no actual, physical touching is essential” for the encounter

 to qualify as a seizure) (internal marks and citation omitted).

¶ 26 In determining whether a show of authority has occurred, relevant

 circumstances include “the number of officers present, whether the officer displayed

 a weapon, the officer’s words and tone of voice, any physical contact between the

 officer and the individual, whether the officer retained the individual’s identification

 or property, the location of the encounter, and whether the officer blocked the

 individual’s path.” State v. Icard, 363 N.C. 303, 309, 677 S.E.2d 822, 827 (2009).

 What constitutes a seizure “will vary, not only with the particular police conduct at

 issue, but also with the setting in which the conduct occurs.” Michigan v. Chesternut,
 STATE V. STEELE

 2021-NCCOA-148

 Opinion of the Court

 486 U.S. 567, 573 (1988).

¶ 27 The present case is somewhat unique in that Defendant was hailed by Officer

 Plummer while they were both driving in separate vehicles, as opposed to walking

 down the street. Seizure cases most typically involve a defendant who is approached

 by an officer on foot while in a public location. See, e.g., Brooks, 337 N.C. at 142, 446

 S.E.2d at 586 (no seizure when defendant was seated in a parked, open-door vehicle

 in a public parking lot and approached by an officer on foot); Isenhour, 194 N.C. App.

 at 544, 670 S.E.2d at 268 (no seizure when defendant was seated in a parked vehicle

 in a public parking lot and officers approached the car on foot). We are unable to find

 any caselaw in this state specifically addressing whether a seizure occurs when an

 officer hails down an individual while both are piloting moving vehicles.

¶ 28 However, the trial court (as well as the dissenting opinion in this case) ignored

 this key distinction in its analysis and instead relied exclusively on cases involving

 on-foot encounters. For example, the dissent first discusses Brooks, wherein we held

 that no seizure occurred when the defendant was approached by officer on foot while

 the defendant was seated in a parked, open-door vehicle in a public parking lot. 337

 N.C. at 137, 446 S.E.2d at 583. The officer greeted the defendant and, after spying

 an empty holster in the car, asked defendant where the gun was, leading to a search

 of the car and the defendant’s arrest. Id.

¶ 29 The dissent similarly relies on Williams, wherein an officer began following a
 STATE V. STEELE

 2021-NCCOA-148

 Opinion of the Court

 vehicle in his patrol car because he suspected the vehicle’s 30-day tag was expired.

 State v. Williams, 201 N.C. App. 566, 567, 686 S.E.2d 905, 906 (2009). As the officer

 ran the tag in his computer, he noticed the defendant pull into a driveway. Id. The

 officer pulled over to the curb on the opposite side of the street, approached the

 vehicle, and inquired with the defendant about the status of his 30-day tag. Id. We

 held that this was not a seizure, because the officer “did not initiate a traffic stop,”

 and the defendant “did not pull into the driveway as a result of any show of authority

 from” the officer. Id. at 570, 686 S.E.2d at 908. We noted that the officer approached

 on foot, that he “did not physically block Defendant’s vehicle from leaving the scene,”

 that he did not activate his sirens or lights, and that he did not use “any language or

 . . . demeanor suggesting that Defendant was not free to leave.” Id. at 571, 686 S.E.2d

 at 909.

¶ 30 Finally, the trial court relied heavily on Wilson, wherein an officer parked his

 patrol car across the street from a residence after receiving a tip that a wanted

 suspect would be there. State v. Wilson, 250 N.C. App. 781, 782, 793 S.E.2d 737, 738

 (2016), aff’d per curiam, 370 N.C. 389, 808 S.E.2d 266 (2017). As the officer parked,

 he saw a pickup truck beginning to exit the driveway of the residence, and he walked

 over intending to speak to the driver, while he “waved his hands back and forth just

 above shoulder level to tell [the defendant] to stop the vehicle.” Id. We held that this

 did not constitute a seizure, noting that (1) the officer “did not approach [the
 STATE V. STEELE

 2021-NCCOA-148

 Opinion of the Court

 defendant] in a confined space”; (2) the defendant’s “movement was not restricted”

 given that the defendant “was in a truck while Officer Johnson was on foot”; (3)

 “Officer Johnson was alone on the scene, he did not draw his weapon, and his lights

 and sirens were off”; and (4) the officer “did not touch [the defendant] or use any

 language or tone which would indicate that compliance with his request would be

 compelled.” Id. at 785-86, 793 S.E.2d at 741.

¶ 31 There are several key differences between the present case and these three

 cases: (1) the fact that this encounter involved two moving vehicles; (2) the time and

 location of the encounter; and (3) Officer Plummer’s use of authoritative gestures to

 hail down Defendant’s vehicle.

¶ 32 First and most notably, Defendant here was followed and hailed by Officer

 Plummer while both were driving in moving motor vehicles—unlike in Brooks,

 Williams, and Wilson, where an officer approached a stationary vehicle on foot. There

 is an important legal distinction between an officer who tails and waves down a

 moving vehicle in his patrol car; and an officer who walks up to a stationary vehicle

 on foot. In the latter scenario, the officer has taken no actions to impede the

 movement of the defendant—whereas in the former scenario, the officer’s show of

 authority has obligated the defendant to halt the movement of his vehicle in order to

 converse with the officer. As the United States Supreme Court has previously

 explained, “stopping or diverting an automobile in transit, with the attendant
 STATE V. STEELE

 2021-NCCOA-148

 Opinion of the Court

 opportunity for a visual inspection of areas of the [vehicle] not otherwise observable,

 is materially more intrusive than a question put to a passing pedestrian.” United

 States v. Mendenhall, 446 U.S. 544, 556-57 (1980) (emphasis added).

¶ 33 Moreover, a reasonable motorist would surely feel less at liberty to “ignore the

 police presence and go about his business” when waved down by an officer in a moving

 patrol car. Bostick, 501 U.S. at 437. In fact, in such a situation most people would

 feel compelled to slow down and speak with the officer, knowing that ignoring the

 request would only end in trouble.

¶ 34 This becomes especially apparent when one examines the criminal

 consequences that might follow when a person ignores an officer’s request in such a

 scenario. For example, N.C. Gen. Stat. § 20-114.1(a) makes it unlawful for any person

 to “willfully fail or refuse to comply with any lawful order or direction of any law-

 enforcement officer[,] . . . which order or direction related to the control of traffic.”

 N.C. Gen. Stat. § 20-114.1(a) (2019). We have previously upheld a conviction under

 this statute when a defendant ignored an officer’s request to drive in a certain lane

 as the officer was directing traffic. See State v. Satterfield, 166 N.C. App. 282, 603

 S.E.2d 167, 2004 WL 1964874, at *1-2 (2004) (unpublished).

¶ 35 Similarly, N.C. Gen. Stat. § 14-223 makes it unlawful to “willfully and

 unlawfully resist, delay, or obstruct a public officer in discharging or attempting to

 discharge a duty of his office.” N.C. Gen. Stat. § 14-223 (2019). We have previously
 STATE V. STEELE

 2021-NCCOA-148

 Opinion of the Court

 upheld a conviction under this statute when officers approached a defendant in his

 improperly stopped vehicle, but the defendant wouldn’t roll down his window, refused

 to speak with them, and acted uncooperatively. See State v. Hoque, 269 N.C. App.

 347, 349-50, 837 S.E.2d 464, 468-69 (2020).

¶ 36 These cases illustrate that a person in Defendant’s situation finds himself

 caught in a Catch-22—comply with the officer’s requests, and relinquish your Fourth

 Amendment rights; or ignore the officer’s requests, and be arrested for resisting a

 public officer. This cannot be consistent with the guarantees in the Fourth

 Amendment and Article I, § 20 of the North Carolina Constitution. We conclude that

 when a person would likely face criminal charges for failing to comply with an officer’s

 “request,” then that person has been seized within the meaning of the Fourth

 Amendment and Article I, § 20 of our state Constitution.

¶ 37 In addition to erroneously ignoring the inherently coercive nature of an officer

 hailing down a moving vehicle while in a marked patrol car, the trial court’s analysis

 failed to adequately account for the time and location of this encounter. See Icard,

 363 N.C. at 309, 677 S.E.2d at 827 (holding that the location and physical

 circumstances of the encounter are relevant seizure factors). Here, Officer Plummer

 first spotted Defendant’s vehicle on an otherwise empty street at around three in the

 morning. He then tailed Defendant as Defendant proceeded down Charles Boulevard

 for some time, made two different left turns, and then entered a campus parking lot—
 STATE V. STEELE

 2021-NCCOA-148

 Opinion of the Court

 a large paved lot that was completely empty. A reasonable person would find such

 an empty, isolated location at such a late time of night to be intimidating, and would

 be more susceptible to police pressure which he or she otherwise might have felt free

 to ignore in a sunlit, crowded location.

¶ 38 Finally, the trial court overlooked the authoritative physical gestures made by

 Officer Plummer indicating that he wished Defendant to stop and speak with him.

 Authoritative gestures made by an officer (or the lack thereof) can be a significant

 factor in determining whether or not a seizure occurred. See, e.g., State v. Wilson,

 198 N.C. App. 406, 681 S.E.2d 565, 2009 WL 2177694, at *3 (2009) (unpublished)

 (holding that no seizure had occurred when the officers “made no gestures that

 Defendant could have reasonably interpreted as an order to stop” as they approached

 his car); State v. Hazel, 262 N.C. App. 373, 820 S.E.2d 132, 2018 WL 5796274, at *6

 (2018) (unpublished) (holding that no seizure had occurred when the officer did not

 “make any authoritative gestures or commands” as he parked his car near the

 defendant’s and asked to speak with him). Moreover, Officer Plummer was

 uniformed, presumably carrying a weapon, and was driving in his clearly-marked

 patrol vehicle. See State v. Knudsen, 229 N.C. App. 271, 282, 747 S.E.2d 641, 649

 (2013) (“Several North Carolina Supreme Court opinions have also found the fact that

 an officer was in uniform to be a significant factor to consider when determining

 whether a seizure has occurred.”).
 STATE V. STEELE

 2021-NCCOA-148

 Opinion of the Court

¶ 39 In sum, when one examines all the attendant circumstances surrounding this

 encounter, the only reasonable conclusion is that Defendant was seized by Officer

 Plummer—especially when one examines this encounter from Defendant’s

 perspective. Around 3:00 in the morning on 2 August 2017, Defendant was driving

 down Charles Boulevard when a police cruiser pulled up directly behind him and

 began tailing him down the street. The street was completely empty aside from these

 two vehicles. The cruiser continued to follow directly behind him as he turned left

 onto Ficklen Drive, and then made another turn into a campus parking lot. Even at

 this early point in the encounter, after being tailed by a police car down empty streets

 into an empty parking lot, any reasonable person would have realized that they are

 the target of police suspicion and are likely to be imminently pulled over.

¶ 40 The intimidating nature of this encounter was further amplified once the two

 vehicles reached the deserted parking lot. As Defendant made a U-turn and

 attempted to leave the parking lot, the patrol car rolled down its window, and the

 officer waved his hands in a clear indication that he wished Defendant to stop.

 Defendant slowed, and the patrol car pulled up right next to him, such that the two

 drivers were facing each other, only three to four feet apart.

¶ 41 Thus, it is evident that Defendant stopped his vehicle’s motion in direct

 response to Officer Plummer’s authoritative conduct and commanding gestures. This

 becomes especially apparent when one considers how a reasonable person would have
 STATE V. STEELE

 2021-NCCOA-148

 Opinion of the Court

 reacted if a non-police vehicle had followed them down public streets into an empty

 parking lot at 3 a.m. and then gestured for them to stop. No reasonable person would

 likely comply with such a request coming from a stranger—making it even more

 apparent that the only reason Defendant stopped here was due to Officer Plummer’s

 display of authority.

¶ 42 Moreover, although the subjective point of view of the officer is not by itself a

 dispositive factor in the seizure analysis, we cannot wholly ignore the telling

 descriptions of this encounter which were provided by Officer Plummer himself.

 Officer Plummer testified that his purpose in waving down the Camaro was to get

 the driver to comply with his directive and stop so that he could speak with him.

 Moreover, in Officer Plummer’s written field report of this encounter (which he

 prepared that day), he expressly described his meeting with Defendant as a “traffic

 stop.” Defendant’s statements during the encounter (as shown by the video) indicate

 that he too considered this encounter to be a non-consensual traffic stop—repeatedly

 asking Officer Plummer “what did I get pulled over for?”

 III. Conclusion

¶ 43 Thus, after examining all the attendant facts and circumstances, we conclude

 that no reasonable person in Defendant’s position would have felt free to ignore

 Officer Plummer’s show of authority. Accordingly, we hold that Defendant was seized

 within the meaning of the Fourth Amendment and Article I, § 20 of the North
 STATE V. STEELE

 2021-NCCOA-148

 Opinion of the Court

Carolina Constitution, and that the trial court erred in denying Defendant’s motion

to suppress. We reverse the trial court’s order denying the motion to suppress and

remand back to the trial court for a new determination on whether Officer Plummer

possessed reasonable suspicion to conduct this traffic stop.

 REVERSED AND REMANDED.

 Judge CARPENTER concurs.

 Judge HAMPSON dissents by separate opinion.
 No. COA20-171 – State v. Steele

 HAMPSON, Judge, dissenting.

¶ 44 The majority correctly identifies the issue that was before the trial court. The

 issue before this Court on appeal, however, is whether the trial court’s Findings of

 Fact are supported by competent evidence in the Record and whether those Findings

 support its Conclusions of law. Because the trial court’s Findings are supported by

 evidence and, consistent with our existing jurisprudence, in turn support the trial

 court’s Conclusions of law, I would affirm the trial court. Accordingly, I dissent.

 I. Factual and Procedural Background

¶ 45 Defendant was arrested and cited for Driving While Impaired on 2 August

 2017. On 17 April 2019, Defendant was found guilty of Driving While Impaired in

 Pitt County District Court and received a sixty-day sentence suspended upon his

 completion of twelve months of unsupervised probation.

¶ 46 Defendant appealed the District Court’s Judgment to the Superior Court on 18

 April 2019. On 23 May 2019, Defendant filed a Motion to Suppress in Superior Court

 arguing the evidence against him was the result of an unlawful traffic stop and

 seizure. The trial court heard Defendant’s Motion to Suppress on 25 October 2019.

 Officer Michael Plummer (Officer Plummer), of the East Carolina University Police

 Department, was the only witness who testified at the hearing.

¶ 47 Officer Plummer testified that on 2 August 2017, at approximately 2:50 a.m.,

 he was driving his marked patrol vehicle on East 10th Street in Greenville, North

 Carolina. At that time, Officer Plummer received a call from dispatch requesting
 STATE V. STEELE

 2021-NCCOA-148

 HAMPSON, J., dissenting

 assistance with a vehicle crash on Charles Boulevard. Officer Plummer stated, as he

 approached the intersection of 14th Street and Charles Boulevard, he saw a yellow

 Camaro turn left from 14th Street onto Charles Boulevard. Officer Plummer followed

 the yellow Camaro which, according to Officer Plummer, “appeared to have its

 daytime running lights on for the headlights but no rear lights were illuminated.”

 Officer Plummer testified the Camaro turned left onto Ficklen Drive and then turned

 right into a large parking lot—with Officer Plummer following.

¶ 48 Officer Plummer stated the Camaro executed a “u-turn and was coming back”

 towards Officer Plummer’s vehicle in the parking lot. Officer Plummer testified the

 parking lot was empty except for the Camaro and Officer Plummer’s patrol vehicle.

 Officer Plummer drove toward the approaching Camaro and positioned his patrol

 vehicle such that the driver’s sides of both vehicles were parallel to one another.

 Officer Plummer, in uniform at the time, rolled down his driver’s window and “rested

 [his] forearm on the door — on the window frame and waved [his] hand up and down”

 in order to get the Camaro to stop. Officer Plummer testified he had not activated

 his blue lights or sirens, nor given any verbal commands to the driver of the Camaro

 at any point prior to Officer Plummer waving his hand.

¶ 49 The Camaro came to a stop with the driver’s windows of both vehicles near and

 facing each other. According to Officer Plummer, the vehicles were “[t]hree to four

 feet” apart. Officer Plummer explained he “began speaking with the driver to see if
 STATE V. STEELE

 2021-NCCOA-148

 HAMPSON, J., dissenting

 he had possibly been through the area and seen anything in relation to the vehicle

 crash that [police] were responding to.” During the hearing, Officer Plummer

 identified Defendant as the driver of the Camaro. Officer Plummer testified he had

 not indicated to Defendant that Defendant was not free to leave nor did he block

 Defendant from leaving the parking lot. According to Officer Plummer, at the time

 he initiated his conversation with Defendant, there were no other officers present.

¶ 50 At the hearing, defense counsel played video recorded by Officer Plummer’s

 dashboard camera during Officer Plummer’s encounter with Defendant. This video

 begins when Defendant’s and Officer Plummer’s vehicles are already stopped and

 after Officer Plummer had asked Defendant if he had seen the earlier accident. The

 first verbal exchange the video depicts is Officer Plummer asking Defendant “how

 much have you had to drink?” Defendant replied he had consumed “a couple beers.”

 After Officer Plummer clarified what Defendant meant by “a couple beers,” he told

 Defendant to “hold tight for me real quick” and immediately pulled his patrol vehicle

 behind Defendant’s. Officer Plummer got out of his patrol vehicle and approached

 Defendant’s driver’s door. Officer Plummer asked Defendant to get out of the Camaro

 and walk back between the Camaro and Officer Plummer’s patrol vehicle. Officer

 Plummer asked if Defendant would submit to a breathalyzer test. Defendant refused.

 Officer Plummer commenced a field sobriety test by asking Defendant to perform

 certain tasks, including following Officer Plummer’s hand with Defendant’s eyes.
 STATE V. STEELE

 2021-NCCOA-148

 HAMPSON, J., dissenting

¶ 51 Eventually, another officer arrived on scene to assist Officer Plummer.

 Defendant was placed in custody and taken to the rear seat of Officer Plummer’s

 patrol vehicle. Defendant asked: “What did I get pulled over for?” Officer Plummer

 replied: “So first of all, I saw you driving without your headlights on.” Officer

 Plummer also told Defendant that Officer Plummer noticed Defendant had slurred

 speech and dilated eyes when Officer Plummer spoke with Defendant about the

 earlier crash. Later in the video, another officer tells Officer Plummer that the

 Camaro’s headlights came on as soon as the other officer turned the car on in order

 to move it into a parking space. Officer Plummer replied that he had seen the Camaro

 moving without its rear lights operating.

¶ 52 Following arguments on the Motion to Suppress, the trial court made several

 oral Findings and denied Defendant’s Motion. Defense counsel then announced

 Defendant’s intent—previously communicated to the State—to enter a guilty plea

 following the denial of his Motion to Suppress and subsequently notice his appeal.

 Defendant subsequently entered a guilty plea to Driving While Impaired, as

 memorialized in a Transcript of Plea, which indicated his plea was entered after the

 Motion to Suppress was denied and reserving Defendant’s right to appeal the trial

 court’s denial of his Motion to Suppress. The trial court again imposed a suspended

 sixty-day sentence and placed Defendant on unsupervised probation for twelve

 months.
 STATE V. STEELE

 2021-NCCOA-148

 HAMPSON, J., dissenting

¶ 53 Defendant gave oral Notice of Appeal in open court and subsequently filed

 written Notice of Appeal from the trial court’s denial of Defendant’s Motion to

 Suppress and resulting 25 October 2019 Judgment to this Court on 4 November 2019.

 On 10 January 2020, the trial court filed a written Order denying Defendant’s Motion

 to Suppress that included the following, pertinent Findings of Fact:

 4. That Officer Plummer saw the Defendant’s vehicle and
 observed that the Defendant’s vehicle appeared to have its
 daytime running lights on for the headlights, but the rear lights
 were not illuminated.

 5. That the lack of illuminated rear lights on the Defendant’s
 vehicle drew Officer Plummer’s attention to the vehicle.

 ....

 13. That after Officer Plummer followed the Defendant’s vehicle
 into the parling lot, the Defendant’s vehicle made a U-turn and
 began traveling towards Officer Plummer’s vehicle.

 14. That Officer Plummer drove driver’s door to driver’s door with
 the Defendant’s vehicle, with Officer Plummer’s vehicle facing the
 opposite direction as the Defendant’s vehicle.

 15. That as Officer Plummer pulled alongside the Defendant’s
 vehicle, Officer Plummer extended his hand out of his driver’s
 window, rested his forearm on his driver’s door, and waved his
 hand up and down.

 16. That Officer Plummer testified that his intention was to
 engage in a voluntary consensual conversation with the
 Defendant.

 ....
 STATE V. STEELE

 2021-NCCOA-148

 HAMPSON, J., dissenting

18. That Officer Plummer began speaking with the Defendant to
see if the Defendant had been through the area and witnessed the
vehicle crash on Charles Blvd.

19. That Officer Plummer was approximately three to four feet
away from the Defendant as they spoke.

20. That at the time Defendant stopped his vehicle and engaged
in a conversation with Officer Plummer, no other officers or patrol
vehicles were on scene.

21. That at the time Defendant stopped his vehicle and engaged
in a conversation with Officer Plummer, Officer Plummer had not
engaged his blue lights or siren.

22. That at the time Defendant stopped his vehicle and engaged
in a conversation with Officer Plummer, Officer Plummer had not
positioned his patrol vehicle in a manner that would obstruct the
Defendant’s vehicle from exiting the parking lot nor restrict his
movement in any way.

23. That at the time Defendant stopped his vehicle and engaged
in a conversation with Officer Plummer, Officer Plummer had not
directed the Defendant to get out of the Defendant’s vehicle nor
restricted the Defendant’s freedom of movement in any way.

24. That at the time Defendant stopped his vehicle and engaged
in a conversation with Officer Plummer, Officer Plummer had not
indicated to the Defendant that the Defendant was in custody or
that the Defendant was not free to leave.

25. That at the time Defendant stopped his vehicle and engaged
in a conversation with Officer Plummer, Officer Plummer had not
exited his patrol vehicle, taken any enforcement action, given any
orders or commands to the Defendant, nor displayed any weapon
or demonstrated any other show of authority to indicate that this
was a traffic stop.
 STATE V. STEELE

 2021-NCCOA-148

 HAMPSON, J., dissenting

 26. That during the conversation with the Defendant, Officer
 Plummer observed factors that ultimately led Officer Plummer to
 investigate and arrest the Defendant for Driving While Impaired.

¶ 54 Based on these Findings, the trial court concluded:

 4. That pursuant to State v. Wilson, this Court has considered the
 factors that Officer Plummer was alone when he encountered the
 Defendant, that Officer Plummer did not draw his weapon, that
 Officer Plummer did not activate his lights or siren on his patrol
 car, that Officer Plummer did not do or say anything to indicate
 to the Defendant that the Defendant was required to stop, and
 that the Defendant was in the Defendant’s own vehicle and could
 have driven around Officer Plummer’s patrol car.

 5. That Officer Plummer had not initiated a traffic stop at the
 time of his conversation with the Defendant.

 6. That Officer Plummer’s conversation with the defendant was a
 voluntary, consensual conversation between Officer Plummer
 and the Defendant at a time when the Defendant’s freedom of
 movement was not restricted, and Officer Plummer had made no
 show of authority to indicate that the interaction was a traffic
 stop or that the Defendant was under arrest.

 7. That the Defendant was not seized under the Fourth
 Amendment when he voluntarily stopped his own vehicle in the
 parking lot next to Officer Plummer’s patrol vehicle and began
 conversing with Officer Plummer.

 II. Appellate Jurisdiction

¶ 55 “An order . . . denying a motion to suppress evidence may be reviewed upon an

 appeal from . . . a judgment entered upon a plea of guilty.” N.C. Gen. Stat. § 15A-

 979(b) (2019). However, a defendant must (1) notify the prosecutor and the trial court

 of his intention to appeal during plea negotiations and (2) provide notice of appeal
 STATE V. STEELE

 2021-NCCOA-148

 HAMPSON, J., dissenting

 from the final judgment. State v. McBride, 120 N.C. App. 623, 625-26, 463 S.E.2d

 403, 404-05 (1995), aff’d per curiam, 344 N.C. 623, 476 S.E.2d 106 (1996).

¶ 56 Here, the Record, including discussion with the trial court and the Transcript

 of Plea memorializing Defendant’s guilty plea arrangement, reflects Defendant gave

 timely notice to both the State and the trial court of his intention to appeal prior to

 the plea being finalized. See id., 463 S.E.2d at 405 (citations and quotation marks

 omitted). Moreover, Defendant’s timely filed written Notice of Appeal also satisfies

 our jurisdictional requirement by memorializing his Notice of Appeal of the Judgment

 in this action. Cf. State v. Miller, 205 N.C. App. 724, 725-26, 696 S.E.2d 542, 542-43

 (2010) (dismissing a defendant’s appeal for lack of jurisdiction where defendant gave

 notice of appeal from the denial of his motion to suppress but not from his judgment

 of conviction). Therefore, Defendant’s appeal is properly before this Court.

 III. Analysis

¶ 57 “Upon timely motion, evidence must be suppressed if: (1) Its exclusion is

 required by the Constitution of the United States or the Constitution of the State of

 North Carolina[.]” N.C. Gen. Stat. § 15A-974(a) (2019). The Fourth Amendment to

 the United States Constitution protects an individual’s right to be free from

 unreasonable seizures. U.S. Const. amend. IV. “Article I, Section 20 of the

 Constitution of North Carolina likewise prohibits unreasonable searches and seizures

 . . . .” State v. Allman, 369 N.C. 292, 293, 794 S.E.2d 301, 303 (2016). Therefore,
 STATE V. STEELE

 2021-NCCOA-148

 HAMPSON, J., dissenting

 evidence obtained as the result of an unreasonable seizure must be suppressed upon

 timely motion.

¶ 58 “An appellate court accords great deference to the trial court’s ruling on a

 motion to suppress because the trial court is entrusted with the duty to hear

 testimony (thereby observing the demeanor of the witnesses) and to weigh and

 resolve any conflicts in the evidence.” State v. Johnston, 115 N.C. App. 711, 713, 446

 S.E.2d 135, 137 (1994) (citations omitted). “Our review of a trial court’s denial of a

 motion to suppress is strictly limited to a determination of whether [the trial court’s]

 findings are supported by competent evidence, and in turn, whether the findings

 support the trial court’s ultimate conclusion.” State v. Reynolds, 161 N.C. App. 144,

 146-47, 587 S.E.2d 456, 458 (2003) (citations and quotation marks omitted). The trial

 court’s conclusions of law, however, are reviewed de novo. See State v. Fernandez,

 346 N.C. 1, 11, 484 S.E.2d 350, 357 (1997). “In reviewing the denial of a motion to

 suppress, we examine the evidence introduced at trial in the light most favorable to

 the State[.]” State v. Moore, 152 N.C. App. 156, 159, 566 S.E.2d 713, 715 (2002)

 (citations omitted).

 A. The Trial Court’s Findings

¶ 59 At the heart of Defendant’s arguments both before the trial court and on appeal

 is his contention his encounter with Officer Plummer was not a voluntary

 conversation about a purported traffic accident, but rather an investigatory stop—
 STATE V. STEELE

 2021-NCCOA-148

 HAMPSON, J., dissenting

 and, thus, a seizure—based on a pretext that Defendant was driving the Camaro

 without lights on. Defendant contends the evidence affirmatively establishes he was

 stopped on a pretext based on Officer Plummer’s allegedly inconsistent statements as

 to whether and which lights were on and the dashcam footage taken after Defendant

 was detained by Officer Plummer showing: (a) the Camaro’s lights were on when

 another officer moved the car, (b) that officer remarking that the lights came on

 automatically, and (c) Officer Plummer responding to Defendant’s inquiry as to why

 he was stopped by noting “so, first of all, I saw you driving without your headlights

 on.”

¶ 60 Thus, Defendant first challenges the trial court’s Findings 4 and 5:

 4. That Officer Plummer saw the Defendant’s vehicle and
 observed that the Defendant’s vehicle appeared to have its
 daytime running lights on for the headlights, but the rear lights
 were not illuminated.

 5. That the lack of illuminated rear lights on the Defendant’s
 vehicle drew Officer Plummer’s attention to the vehicle.

¶ 61 Defendant argues Officer Plummer’s statements during the encounter with

 Defendant, in his subsequent report, and testimony before the trial court are

 “materially inconsistent” and directly contradicted by the dashcam footage along with

 Defendant’s supporting affidavit indicating the rented Camaro was equipped with

 automatic lights which were operable at the time Defendant rented the Camaro. The

 video evidence of the encounter, however, begins after Officer Plummer and
 STATE V. STEELE

 2021-NCCOA-148

 HAMPSON, J., dissenting

 Defendant had stopped and had already begun conversing with one another, and,

 thus, does not capture Officer Plummer first observing the Camaro. As such, while

 the video evidence may well have some tendency to contradict Officer Plummer’s

 testimony, at most it creates inconsistency in the evidence. This contradictory

 evidence and the evidence of the Camaro’s automatic light feature and Officer

 Plummer’s allegedly inconsistent statements may well, in turn, tend to bear on the

 credibility and weight to be given to Officer Plummer’s testimony he first observed

 the Camaro being driven at night with no lights on. Nevertheless, it is the role of the

 trial court—and not this Court—to weigh testimony and resolve inconsistencies in

 the evidence. State v. Steen, 352 N.C. 227, 237, 536 S.E.2d 1, 7 (2000) (“[A] trial

 court’s resolution of a conflict in the evidence will not be disturbed on appeal[.]”);

 Johnston, 115 N.C. App. at 713, 446 S.E.2d at 137 (“the trial court is entrusted with

 the duty to hear testimony (thereby observing the demeanor of the witnesses) and to

 weigh and resolve any conflicts in the evidence”).

¶ 62 Here, the trial court weighed the evidence and resolved the conflict in the

 evidence in favor of the State. Thus, there is evidence—in the form of Officer

 Plummer’s testimony—to support the trial court’s Findings 4 and 5. Moreover,

 ultimately, these Findings were not dispositive to the trial court’s conclusion Officer

 Plummer did not initially seize Defendant when Defendant stopped to talk with
 STATE V. STEELE

 2021-NCCOA-148

 HAMPSON, J., dissenting

 Officer Plummer in the parking lot because the trial court’s ruling did not turn on

 whether Officer Plummer had reasonable suspicion to conduct an investigatory stop.

 B. Voluntary Encounter

¶ 63 Rather, the trial court concluded the encounter between Defendant and Officer

 Plummer was voluntary. Therefore, the inquiry turns to whether the trial court’s

 Findings support this conclusion. Specifically, Defendant argues Officer Plummer

 seized Defendant, for Fourth Amendment purposes, because Officer Plummer waved

 at Defendant to stop, constituting a show of authority to which Defendant acquiesced.

 Defendant further contends because Officer Plummer did not have probable cause or

 reasonable suspicion to seize Defendant initially, the stop violated his rights under

 the Fourth Amendment, and the trial court should have suppressed the evidence

 obtained as a result of an unreasonable seizure.

¶ 64 Here, relevant to the issue of whether the initial encounter was a stop for

 Fourth Amendment purposes, the trial court found: Officer Plummer “pulled

 alongside” Defendant’s vehicle, rested his arm on his driver’s window frame, and

 waved his hand up and down; Officer Plummer was “three to four” feet away from

 Defendant as they were speaking; Officer Plummer began speaking with Defendant

 to see if Defendant had witnessed the earlier crash; no other officers were initially at

 the scene; that when Defendant stopped and spoke with Officer Plummer, Officer

 Plummer had not engaged his blue lights or siren; Officer Plummer had not
 STATE V. STEELE

 2021-NCCOA-148

 HAMPSON, J., dissenting

 obstructed Defendant’s vehicle from leaving the parking lot; at the time Defendant

 stopped his vehicle, Officer Plummer did not direct Defendant to get out of

 Defendant’s vehicle nor restricted Defendant’s freedom of movement in any way; and

 at the time Defendant stopped, Officer Plummer had not given Defendant any orders

 or commands, indicate that Defendant was in custody or not free to leave, nor did

 Officer Plummer display a weapon or demonstrate “any other show of authority[.]”

¶ 65 Defendant first challenges Finding 16 where the trial court found: “That

 Officer Plummer testified that his intention was to engage in a voluntary consensual

 conversation with the Defendant.” Defendant argues this Finding is invalid to

 support the trial court’s conclusion because it constitutes a mere recitation of Officer

 Plummer’s testimony rather than a true Finding of Fact. Although Defendant is

 correct in this assertion, this purported “Finding” does not impact the analysis of the

 trial court’s conclusion because “the Fourth Amendment does not include a

 consideration of the officer’s subjective intent, and his motive will not invalidate the

 action taken as long as the circumstances, viewed objectively, justify that action.”

 State v. Icard, 363 N.C. 303, 318, 677 S.E.2d 822, 832 (2009) (Newby, J. dissenting)

 (quoting Whren v. United States, 517 U.S. 806, 812-13, 135 L. Ed. 2d 89, 98 (1996)

 (citation and quotation marks omitted)).

¶ 66 Defendant further challenges the portions of the trial court’s Findings 24 and

 25 establishing Officer Plummer had not indicated Defendant was in custody or not
 STATE V. STEELE

 2021-NCCOA-148

 HAMPSON, J., dissenting

free to leave, had not taken any enforcement action, had not given Defendant any

orders or commands, nor demonstrated any other show of authority to Defendant.

Whether, however, Officer Plummer’s actions in waving at Defendant to stop his

vehicle constituted a show of authority is a question of law. Icard, 363 N.C. at 308,

677 S.E.2d at 826. Thus, this determination is reviewed de novo. Id. Therefore, as

conclusions of law, these findings are more properly reviewed in tandem with our

review of the trial court’s labelled Conclusions of Law:

 4. That pursuant to State v. Wilson, this Court has considered the
 factors that Officer Plummer was alone when he encountered the
 Defendant, that Officer Plummer did not draw his weapon, that
 Officer Plummer did not activate his lights or siren on his patrol
 car, that Officer Plummer did not do or say anything to indicate
 to the Defendant that the Defendant was required to stop, and
 that the Defendant was in the Defendant’s own vehicle and could
 have driven around Officer Plummer’s patrol car.

 5. That Officer Plummer had not initiated a traffic stop at the
 time of his conversation with the Defendant.

 6. That Officer Plummer’s conversation with the defendant was a
 voluntary, consensual conversation between Officer Plummer
 and the Defendant at a time when the Defendant’s freedom of
 movement was not restricted, and Officer Plummer had made no
 show of authority to indicate that the interaction was a traffic
 stop or that the Defendant was under arrest.

 7. That the Defendant was not seized under the Fourth
 Amendment when he voluntarily stopped his own vehicle in the
 parking lot next to Officer Plummer’s patrol vehicle and began
 conversing with Officer Plummer.
 STATE V. STEELE

 2021-NCCOA-148

 HAMPSON, J., dissenting

¶ 67 “A seizure occurs ‘when the officer, by means of physical force or show of

 authority, has in some way restrained the liberty of a citizen.’ ” State v. Turnage, 259

 N.C. App. 719, 723, 817 S.E.2d 1, 4 (2018) (quoting Terry v. Ohio, 392 U.S. 1, 19 n.16,

 20 L. Ed. 2d 889, 905 n.16 (1968)); see also State v. West, 119 N.C. App. 562, 566, 459

 S.E.2d 55, 58 (1995) (“A seizure does not occur until there is a physical application of

 force or submission to a show of authority.”) (citing California v. Hodari D., 499 U.S.

 621, 626, 113 L. Ed. 2d 690, 697 (1991)). However, “[n]o one is protected by the

 Constitution against the mere approach of police officers in a public place . . .

 communication between the police and citizens involving no coercion or detention”

 does not implicate the Fourth Amendment. State v. Brooks, 337 N.C. 132, 141, 446

 S.E.2d 579, 585 (1994) (citations and quotation marks omitted). Rather, “[t]he test

 for determining whether a seizure has occurred is whether under the totality of the

 circumstances a reasonable person would feel that he was not free to decline the

 officers’ request or otherwise terminate the encounter.” Id. at 142, 446 S.E.2d at 586

 (citing Florida v. Bostick, 501 U.S. 429, 434-38, 115 L. Ed. 2d 389, 398-99 (1991)).

¶ 68 When reviewing the totality of the circumstances surrounding an alleged show

 of authority, our courts review factors including but not limited to: “the number of

 officers present, whether the officer displayed a weapon, the officer’s words and tone

 of voice, any physical contact between the officer and the individual, whether the

 officer retained the individual’s identification or property, the location of the
 STATE V. STEELE

 2021-NCCOA-148

 HAMPSON, J., dissenting

 encounter, and whether the officer blocked the individual’s path.” Icard, 363 N.C. at

 303, 309, 677 S.E.2d at 827 (citing United States v. Drayton, 536 U.S. 194, 153 L. Ed.

 2d 242 (2002)). Moreover: “The activation of blue lights on a police vehicle” is a factor

 to consider but is not alone determinative. State v. Baker, 208 N.C. App. 376, 386,

 702 S.E.2d 825, 832 (2010).

¶ 69 In State v. Brooks, the North Carolina Supreme Court concluded an officer did

 not need reasonable suspicion or probable cause to walk up to a man sitting in a

 vehicle and to ask the man—once the officer saw an empty gun holster next to the

 man—where the gun was. 337 N.C. at 142, 446 S.E.2d at 586. There, the Court

 reasoned the encounter with the uniformed officer was not a seizure because the

 officer did not apply force and the defendant did not submit to a show of force. Id.

 The officer simply asked a question, and when the defendant answered stating he

 was sitting on the gun, the officer then had probable cause to arrest the defendant

 and search the defendant’s vehicle. Id.

¶ 70 This Court has also weighed in on whether the totality of the circumstances

 surrounding individuals’ encounters with police constitute a seizure for Fourth

 Amendment purposes. We have held encounters not involving police applying

 physical force to be seizures requiring at least reasonable suspicion. In State v.

 Knudsen, police observed the defendant walking toward a car with a “clear cup” and

 in an area surrounded by restaurants that served alcohol. 229 N.C. App. 271, 275-
 STATE V. STEELE

 2021-NCCOA-148

 HAMPSON, J., dissenting

 76, 747 S.E.2d 641, 645-46 (2013). Officers, both in uniform with weapons, watched

 the defendant get into the car briefly, then get out and walk down a nearby sidewalk.

 Id. at 282, 276 S.E.2d at 649. One officer stopped his bicycle on the sidewalk in front

 of the defendant and the other parked his police vehicle behind the defendant in an

 alley cutting off the sidewalk behind the defendant. Id. at 283, 276 S.E.2d at 650.

 The officer on the bicycle asked the defendant what was in the cup. Id. We held the

 officers had seized the defendant when they blocked his path, and one officer asked

 the defendant what was in his cup. Id. We reasoned, after considering the totality

 of the circumstances, a reasonable person would not feel he or she was free to leave.

 Id.

¶ 71 However, we have held encounters where police do not use force or overt shows

 of authority were not seizures requiring at least reasonable suspicion. Our prior

 decisions in State v. Williams, 201 N.C. App. 566, 686 S.E.2d 905 (2009), and State v.

 Wilson, 250 N.C. App. 781, 793 S.E.2d 737 (2016), aff’d per curiam, 370 N.C. 389

 (2017), are highly instructive.

¶ 72 In Williams, a police officer followed a car at approximately 1:30 a.m. because,

 as the officer testified, the car’s license plate was dirty and obscured. 201 N.C. App.

 at 567, 686 S.E.2d at 906. As the officer followed the car and ran the license plate in

 the officer’s computer, the car pulled into a driveway. Id. The officer then pulled his

 vehicle to the curb on the other side of the street from the driveway. Id. The officer
 STATE V. STEELE

 2021-NCCOA-148

 HAMPSON, J., dissenting

 approached the vehicle and recognized a passenger in the vehicle as someone he had

 seen in prior drug possession and prostitution arrests. Id. The officer asked the

 driver about the car’s thirty-day tag; the driver responded that the tag was expired.

 Id. We held this was not a seizure and relied on our prior decision in State v. Isenhour,

 194 N.C. App. 539, 670 S.E.2d 264 (2008). Williams, 201 N.C. App. at 571, 686 S.E.2d

 at 908-09 (“[O]ur Court noted: (1) that the defendant was free to drive away from the

 officers, as the patrol car did not physically block the defendant’s car; (2) that nothing

 else in [the officer’s] behavior or demeanor amounted to the show of force necessary

 for a seizure to occur[;] (3) that the officers did not create any real psychological

 barriers to [the] defendant’s leaving such as activating their siren or blue lights,

 removing guns from their holsters, or using threatening language; and (4) that the

 encounter proceeded in a non-threatening manner and that [the] defendant was

 cooperative at all times.”) (citations and quotation marks omitted).

¶ 73 Thus, as in Isenhour, we held the encounter in Williams was not a seizure

 because:

 [The officer] parked his patrol car on the opposite side of the street
 from the driveway in which Defendant was parked, and thus did
 not physically block Defendant’s vehicle from leaving the scene.
 Further, Officer Wade did not activate the siren or blue lights on
 his patrol car. There is no evidence that he removed his gun from
 its holster, or used any language or displayed a demeanor
 suggesting that Defendant was not free to leave. As was the case
 in Isenhour, it appears that the encounter between Officer Wade
 and Defendant proceeded in a non-threatening manner and that
 STATE V. STEELE

 2021-NCCOA-148

 HAMPSON, J., dissenting

 [D]efendant was cooperative at all times. A reasonable person in
 these circumstances would feel free to disregard the police and go
 about his business.

 201 N.C. App. at 571, 686 S.E.2d at 909 (citations and quotation marks

 omitted).

¶ 74 More recently, in Wilson, we held a similar encounter to the one in this case

 was not a seizure. An officer approached a house to inquire about a person wanted

 for arrest. Wilson, 250 N.C. App. at 782, 793 S.E.2d at 738. The officer parked his

 vehicle across the street from the house. Id. As the officer approached the house, he

 saw a vehicle backing out of the driveway. Id. The officer was behind the vehicle and

 waved his hands above his shoulders in order to get the vehicle to stop. Id. As soon

 as the officer approached the driver, he could smell alcohol and asked the driver how

 many drinks the driver had consumed. Id. In concluding this was not a seizure, we

 reasoned:

 Considering the totality of the circumstances, Officer Johnson’s
 hand motions were not so authoritative or coercive that a
 reasonable person would not have felt free to leave. This holding
 is in line with established North Carolina precedent in cases in
 which no lights or sirens were used, no weapon was brandished,
 no language or behavior was used indicating compliance was
 mandatory, and the defendant’s movement was not blocked.

 Id. at 788, 793 S.E.2d at 742.

¶ 75 Here, as in Williams, Officer Plummer’s encounter with Defendant was in the

 early morning hours. Officer Plummer was in uniform and driving a marked patrol
 STATE V. STEELE

 2021-NCCOA-148

 HAMPSON, J., dissenting

 vehicle but never activated his blue lights or siren, nor did he give any verbal

 commands to Defendant to stop. Although he did not merely approach Defendant on

 foot and ask Defendant a question, Officer Plummer waving his hand to get

 Defendant to stop is similar to the officer waving his arms in Wilson. Moreover: there

 were no other officers at the scene; Officer Plummer did not display his firearm;

 Officer Plummer did not block Defendant from leaving the parking lot; and Officer

 Plummer did not shout or use a tone of voice indicating authority—he simply asked

 Defendant if Defendant had seen anything regarding the earlier, single-car crash.

 Our existing precedent compels the conclusion this conversation would not lead a

 reasonable person to feel he or she was not free to leave.

¶ 76 Thus, in this case, the trial court properly considered the totality of the

 circumstances, including specifically applying the factors employed in Wilson, to

 conclude Officer Plummer’s encounter with Defendant was voluntary. Therefore, the

 trial court further properly concluded Officer Plummer’s initial encounter was not a

 seizure for Fourth Amendment purposes. Defendant was not seized until Officer

 Plummer, already having at least reasonable suspicion Defendant was impaired,

 asked how many drinks Defendant had consumed and told Defendant to remain

 where he was as Officer Plummer maneuvered his vehicle behind Defendant’s

 vehicle. Consequently, the trial court did not err by denying Defendant’s Motion to

 Suppress.
 STATE V. STEELE

 2021-NCCOA-148

 HAMPSON, J., dissenting

¶ 77 The majority points to three “key differences” between this case and the above

 precedent: (1) that the encounter involved two moving vehicles; (2) the time and

 location of the encounter; and (3) “Officer Plummer’s use of authoritative gestures to

 hail down Defendant’s vehicle.” Moreover, the majority accuses the trial court, and

 this dissent, of ignoring the fact that this case involved two moving vehicles. Not so.

 The trial court’s Order, and this dissent, simply apply our existing precedent to the

 circumstances involving an officer in a vehicle gesturing to a defendant in another

 vehicle as presented in this case. As noted above, this precedent contemplates factors

 equally applicable to a determination of a show of authority, including when both the

 police and a defendant are in moving vehicles—for example, whether the officer has

 engaged the vehicle’s blue lights or sirens. Baker, 208 N.C. App. at 386, 702 S.E.2d

 at 832.

¶ 78 This case, as noted above, is also similar in time and location to the time and

 location in Williams. Here, the encounter between Officer Plummer and Defendant

 began just before 3 a.m. In Williams, the encounter between the officer and the

 defendant occurred at approximately 1:30 a.m. Thus, both cases involved encounters

 with police in the early morning hours where, presumably, the officers and the

 defendants were not surrounded by other people and vehicle traffic. In Williams, the

 officer approached the vehicle in a private driveway, which may well be more coercive

 than here where Officer Plummer approached a vehicle in a parking lot. The majority
 STATE V. STEELE

 2021-NCCOA-148

 HAMPSON, J., dissenting

 points to Officer Plummer’s “tailing” Defendant during the morning hours as

 particularly coercive. However, the officer in Williams also “tailed” the defendant.

 201 N.C. App. at 567, 686 S.E.2d at 906. Moreover, the Record does not indicate

 Defendant in this case ever recognized Officer Plummer was following him.

¶ 79 Last, the majority asserts the trial court “overlooked” Officer Plummer’s

 “authoritative physical gestures.” However, the trial court expressly considered the

 facts and factors in Wilson in concluding Officer Plummer did not seize Defendant.

 In Wilson, the officer waved his arms above his shoulders in order to get the defendant

 to stop the defendant’s moving vehicle. Wilson, 250 N.C. App. at 782, 793 S.E.2d at

 738. In this case, Officer Plummer rested his arm on his driver’s window frame and

 moved his hand up and down to get Defendant’s attention. Thus, if there is a

 distinction between the facts of this case and Wilson, it is that the physical gestures

 in Wilson—where we held there was no seizure—were arguably more authoritative

 than the gestures in this case.

¶ 80 The majority also asserts our application of existing precedent encourages the

 public to ignore, what the majority concedes are, police “requests” at the public’s own

 legal peril. Again, not so. Cooperation between law enforcement and the public they

 serve in myriad of daily consensual, voluntary interactions is essential to a

 functioning civil society—and, to be clear, that cooperation and civility must extend

 both ways to avoid unnecessary escalation of these encounters. Our law recognizes,
 STATE V. STEELE

 2021-NCCOA-148

 HAMPSON, J., dissenting

 however, that there can be a fine line between a voluntary encounter with law

 enforcement and a Fourth Amendment seizure and further recognizes that the proper

 place for that line drawing exercise is in the courts and not on the streets—and,

 further still, that a trial court weighing all the circumstances and hearing and seeing

 the evidence first-hand is in the best place to make these crucial factual

 determinations.

 IV. Conclusion

¶ 81 Here, the trial court properly conducted the analysis of the circumstances by

 finding facts supported by the evidence and which support its legal conclusions. The

 trial court’s Order and subsequent Judgment entered upon Defendant’s plea should

 be affirmed.